BRENTON BROTHERS, Appellant, v. J. W. DORR et al., Appellees.

No. 40735.

DECEMBER 17, 1931.

C. E. Hunn, H. S. Hunn, and Guy H. Hall, for appellant.

Clark, Byers, Hutchinson & Garber, P. M. Hutchinson, and Chas. Hutchinson, for appellees.

ALBERT, J.—On the 5th day of June, 1919, Brenton Brothers obtained a judgment in the district court of Polk County, Iowa, against the defendants in the sum of $36,995.53, with interest, attorney fees and costs. The number of this case was 28151, Law 57.

On the 26th day of December, 1919, an action, designated as No. 29326, Law 57, was commenced against these same defendants by Charles R. Brenton for $2,000 for rent due on a farm. In this latter case the defendants filed a counterclaim based on an alleged breach of contract between them and Brenton Brothers claiming damages in the sum of $707,750.00. This latter case has not yet been tried or disposed of.

On September 15, 1930, a general execution was issued on the judgment obtained in the first case, above described, and the sheriff was instructed to levy upon and sell "any and all right, claim, thing in action and cause of action which John W. Dorr and/or Elizabeth C. Dorr have against Chas. R. Brenton, the Estate of Chas. R. Brenton, Clyde E. Brenton and/or the partnership known as Brenton Bros. and as stated and pleaded in and as a certain counterclaim by and on behalf of the said John W. Dorr and/or Elizabeth C. Dorr in the action now pending in and before the District Court of Iowa in and for Polk County, and described and known as No. 29326 Law, Chas. R. Brenton, Plaintiff vs. John W. Dorr and Elizabeth C. Dorr, Defendants."

On September 16, 1930, execution was levied in the following manner according to the sheriff's return which recites:

"I hereby certify that the annexed general execution came into my hands the 16th day of September, 1930, at 10 o'clock A.M., and by virtue thereof on the 16th day of September, 1930, at 4:33 o'clock P.M., I levied on the following described prop-

erty as the property of said defendants, to wit: (Here follows the same description above set out in the instructions to the sheriff).

"It (is) hereby levied upon this 16th day of September, 1930, by virtue of a general execution to me directed by the clerk of the district court of Polk County, Iowa, in the case of Brenton Brothers vs. J. W. Dorr and E. C. Dorr, being recorded in Law 57, No. 28151.

"The foregoing levy was made by entering upon judgment docket law 59 on page 29326, a docket in the office of the clerk of the district court of Polk county, Iowa, a memorandum of such levy, giving the name of the parties, plaintiff and defendant, the court from which the execution issued and the date and hour of such entry and by signing the same."

The record does not show that any notice of this levy was served upon either of the defendants. It does show that the statutory notice of the sheriff's sale of this property was served personally upon each of the defendants, and the same notice was published as required by law. This property was appraised at $2,000 in accordance with the statute.

At this point in the proceedings, the defendants appeared and filed a motion to quash the execution and levy, and to stay further proceedings thereunder until such a time as that the counterclaim in the latter case be tried. Due notice of this motion was served on Brenton Brothers and their attorney. Thereupon an affidavit was filed, stating, among other things, that Charles R. Brenton died on the 1st day of September, 1924; that his estate had been administered upon and closed.

The matter of the hearing on this motion to quash etc. coming on, the plaintiffs filed a motion to strike all of the paragraphs in the first division thereof, which constitute a part of the motion asking that the writ be quashed; and also all of the second division of said motion which asked for a stay of further proceedings, and to set aside and release the levy made thereunder. This motion was resisted, some evidence was taken in relation thereto, and on the 17th of October, 1930, ruling was made thereon. The court sustained the part of the motion to quash and stay execution in so far as to hold: "It is further ordered and adjudged that the defendants' motion to stay execution and the levy made thereunder be and the same is hereby

sustained.''. This stay was to operate until a trial could be had in case No. 29326, and the merits of that controversy determined. The court then proceeded:

"The court does not at this time make any ruling as to that part of the defendants' motion which asks that the execution and levy be quashed and makes no ruling at this time as to the regularity or validity of the execution or the levy thereunder, but expressly reserves a ruling as to this part of said motion for further proceedings as to the same, if it shall be deemed advisable.''

Thereupon, after having taken due exception, the plaintiffs moved for a bond as provided by Sections 12527 to 12529, Code, 1931, inclusive. This motion was overruled and appeal was taken.

Vigorous complaint is lodged against the issuance of the stay order above referred to.

In Freeman on Executions, 3d Ed., Vol. 1, sec. 32, it is said:

"These stays of execution may be regarded as of three classes, first, those which are ordered by the court in which the judgment was rendered, but not as the result of any appellate proceedings, and which proceed upon the ground that, for some cause, the execution of the judgment ought to be postponed to some subsequent date, or, perhaps, ought not to take place at all; second, those which are a consequence of, or attend, appellate proceedings; and third, those which result from statutes granting the defendant a further time in which to satisfy the judgment upon his giving certain security therefor. Each court has such general control of its process as enables it to act for the prevention of all abuse thereof.'' See, also, 10 R. C. L. p. 1248, Sec. 43; 23 C. J. 522, Sec. 386.

Under the third class above specified, we have statutory provisions Section 11706, Code, 1931, et seq., which provide for a stay of execution. By complying with the requirements of these sections of the statute, a stay of execution is a matter of absolute right. This class of a stay is not involved in the present case; nor is the question involved as to a stay which is effected by appeal.

The first class of stay marked out by Freeman is one which arises out of and by reason of the supervisory power of the court over its own process, and is available whenever it is necessary to accomplish the ends of justice. 23 C. J. 521, and cases there cited. A stay of this kind is always a discretional matter with the court, and will not be reversed by this court unless the power to issue the same is capriciously exercised or abused. Granger v. Craig, 85 N. Y. 619; Sawin v. Mt. Vernon Bank, 2 R. I. 382; 23 C. J. 528.

If the applicant shows some reason why judgment should not be enforced against him at the present time because of an independent proceedings and to proceed with the execution would impair his equities or render the independent proceedings ineffective, or otherwise prejudice him, the court may grant a reasonable stay of execution and afford him an opportunity to establish his claim and to escape the inequitable use of the writ. Gravett v. Malone, 54 Ala. 19; Ex parte Burrill, 24 Cal. 350; People v. Cloud, 3 Ill. 362; Bass v. Chambliss, 9 La. Ann. 376; Wilkson v. State, 12 Mo. 353; Wiggin v. Janvrin, 47 N. H. 295; Starr v. Schuyler, 3 Johns. (N. Y.) 139; Commonwealth v. MaGee, 49 Am. Dec. (Pa.) 509; Steere v. Stafford, 12 R. I. 131; Wotton v. Parsons, 4 McCord (S. C.) *368; U. S. v. McLemore, 4 How. 286, 11 L. Ed. 977; Herrington v. Block, 25 S. E. (Ga.) 426.

Under the aforesaid recited facts in this case, we reach the conclusion that the court had the inherent power to issue the stay order which it did issue, and did not abuse his discretion in so doing.

II. It is next insisted that this stay order should not have been issued without requiring the applicant to put up a bond or give security.

We are not operating in this case under the quoted provisions of the Code as to stay orders, but are considering a case where the stay order was issued under the inherent power of the court. It is not necessary in all cases for the judge granting the stay to require security. 23 C. J. 528, and cases there cited in notes 93 and 94. In event a bond is not required, the applying party, before he is entitled to a stay, should show that the opposite party is not prejudiced by the issuance of such stay, and we find that the record in this case does so show. The court

did not abuse its discretion in refusing to require a bond on the issuance of the stay.

One of the grounds of the motion to quash the writ and stay sale thereunder was that no notice of the levy was made on either of the defendants. If such notice is necessary, it might be utilized as a basis for staying the sale of the property under the conditions then existing.

Section 11676, Code, 1931, provides that debts due a debtor under execution and property of his in the hands of third persons are to be levied upon in the manner provided for attaching the same.

Section 12099, Code, 1931, provides that when things in action or debts are levied upon, notice of such levy must be given to the debtor as provided in Section 12107.

It is conceded in this case,—or at least established by the evidence,—that no such notice as required by the two aforesaid sections was ever given to either of the defendants. Hence it must necessarily follow that no valid levy was made on this property and the court was authorized for this reason, if for no other, to stay further proceedings under the execution. Whether this notice might yet be given and thus overcome the irregularity is not before us.

Back of this, however, lies the basic question in the case and that is, whether or not a levy could be made on the alleged right or cause of action set up by the defendants in their counterclaim in the pending lawsuit. In other words, the defendants allege that they have a claim for something over $707,000 against the plaintiffs herein for damages arising out of a breach of contract. The question is, can this alleged claim for breach of contract be reached by levy under execution, or can it be reached by garnishment only.

This question is wholly new in this jurisdiction, although counsel assert that some of our decisions are controlling in this matter by analogy. Both sides of the controversy rely on Osborn v. Cloud, 23 Iowa 104. At the time the Osborn case was decided, there was no provision under the Iowa statute specifically authorizing a levy upon a judgment. The Osborn case was an attachment case and an attempt to levy on a judgment. The question was squarely raised as to whether such levy could be made, and it was held it could not and the desired end would have to be

reached by garnishment. The reason for this holding is set out by the court and is based on Section 3272, Revision of 1860, which reads:

"Bank bills and other things in action, may be levied upon and sold, or appropriated as hereinafter provided, and assignments *thereon* by the officer shall have the same effect as if made by the defendant, and may be treated as so made."

The Osborn case is made to turn on the use of the word "thereon" in the above section of the Revision of 1860, from which the conclusion is reached that the legislature did not contemplate a levy upon a judgment the same as upon a bank bill, promissory note and the like. After the decision in the Osborn case, the 'Code of 1873 was adopted. The section in the latter Code reads as follows (Sec. 3046):

"Judgments, bank bills, and other things in action, may be levied upon and sold, or appropriated as hereinafter provided, and assignment *thereof* by the officer shall have the same effect as if made by the defendant."

It will be noticed that the Code of 1873 changed this section by including therein in the first instance judgments, and changing the word "thereon" as it appeared in the Revision of 1860, to "thereof". This latter change, although a change of only one letter, shows a specific intent on the part of the legislature to make the law different under the Code of 1873 from what it was in the Code of 1860. In this respect this section continued in the Code of 1897 and the Codes of 1924, 1927 and 1931. The basis of the decision in the Osborn case therefore no longer exists, and the change of the word "thereon" to "thereof" shows a legislative intent, so far as the present case is concerned, to authorize the sheriff to make an assignment of any kind of property on which he may levy, including "things in action". We conclude, therefore, that the Osborn case is entitled to no consideration on the question we have before us.

Two other Iowa cases are called to our attention, Cedar Rapids Pump Co. v. Miller & Sons, 105 Iowa 674, and Smith v. Sioux City Nursery & Seed Co., 109 Iowa 51. In the Cedar Rapids Pump Co. case, supra, an attachment was issued against the property of Miller & Sons and the Benton Savings Bank was

garnished. Prior to the service of this garnishment, the Benton Savings Bank had sued the same defendants, an attachment issued and the sheriff levied on the books of account of Miller and Sons and took the books containing the same into his possession. None of the persons from whom said collections had been made were garnished, and the only thing taken by the sheriff in making the levy were the books containing the accounts. Section 2967, Code, 1873, then in force, provided, among other things, that "debts due the defendant * * * are attached by garnishment thereof"; and the conclusion of the court in that case was that "neither the accounts * * * were in the custody of the law, nor of the district court", and the levy was ineffectual; that under the aforesaid section of the statute, the plaintiffs should have garnished, and they obtained nothing by levy on the books of account.

The requirements of the aforesaid section of the Code of 1873 disappeared on the adoption of the Code of 1897 and the subject-matter therein was divided into four different sections, 3894, 3896, 3897, and 3900. These sections are rearranged in the Code of 1924 as Sections 12098, 12100, 12101, 12107 and 12108.

The case of Smith v. Sioux City Nursery & Seed Co., supra, so far as the question we are considering is concerned, refers to the Cedar Rapids Pump Co. case, supra, and says: "We held that a levy on books of account is not a levy on the debts charged therein". It is apparent, therefore, that none of the cases cited give us any light on the question before us and the same is *res nova* in this State.

Section 11672, Code, 1924, reads as follows:

"Judgments, money, bank bills, and other things in action may be levied upon, and sold or appropriated thereunder, and an assignment thereof by the officer shall have the same effect as if made by the defendant."

The crux of the whole affair lies in the words in the above section "other things in action". What do these words mean?

In the case of Sellers v. Arie, 99 Iowa 515, we had the question of the right of the assignment of a claim for recovery of money paid for intoxicating liquors, and the question was whether or not the same was assignable. We said:

"The claim is thus put upon the same ground as any other

valid promise to pay, and it is assignable, the same as any other lawful demand or chose in action, which 'is a right to receive or recover a debt, or money, or damages, or for a tort, connected with contract, but which cannot be enforced without action. * * * And a chose, or thing in action, is assignable in this state."

The above case, like many other cases which might be cited, does not discriminate between a "chose in action" and a "thing in action", and in many instances in the reports these terms are used interchangeably.

In Haskell v. Blair, 57 Mass. 534, it is said:

"A chose in action * * * is, 'a right not reduced into possession' * * * (or a right under) 'a contract which, in case of non-performance, can only be reduced to beneficial possession by an action or suit.' "

This holding is the same as Ramsey v. Gould, 57 Barb. (N. Y.) 398, and Sterling v. Sims, 72 Ga. 51; U. S. v. Moulton, 27 Fed. Cas. 11; Goldman v. Furness Withy & Co., 101 Fed. 467. That it includes the right of action for personal injury see Bennett v. Bennett, 23 N. E. (N. Y.) 17; City of Cincinnati v. Hafer, 30 N. E. (Ohio) 197; Gillet v. Fairchild, 4 Denio (N. Y.) 80; Wrightsville & T. R. Co. v. Vaughan, 71 S. E. (Ga.) 691.

In Higbee v. State, 104 N. W. (Neb.) 748, the court said:

"The term 'chose (or thing) in action' is used in contradiction to chose or thing in possession. It is used when the title to the money or property (the thing) is in one person, and the possession in another."

The Arkansas Supreme Court in Smead v. Chandler & Co., 76 (Ark.) S. W. 1066 says that a "chose in action" and a "debt" are synonymous.

The Illinois Supreme Court in Tumy v. Mayer, 124 N. E. 661 says:

"A thing in action or a chose in action within the Chancery Act * * * authorizing a judgment creditor by bill to compel discovery of anything in action due the judgment debtor, and to subject it to payment of judgment, is property distinguished from a thing of which the owner has actual or constructive

possession, but for which he may bring action to reduce to possession \* \* \*.''

In Sharp v. Cincinnati, N. O. & T. P. Ry. Co., 179 S. W. 375, the Tennessee Supreme Court holds that a chose in action includes right of action for tort.

In Hammond v. Carthage Sulphite Pulp & Paper Co., 8 Fed. (2d Ed.) 35, l. c. 38, the Circuit Court of Appeals held that a demand for damages for breach of contract was included in the mortgage under a clause covering ''choses in action''.

To the same effect see Power & Irrigation Company of Clear Lake v. Bank of Woodland, 226 Fed. 698; Pioneer Coal Co. v. Asher, 276 S. W. (Ky.) 487.

In the case of State ex rel. Coffey v. District Court, 240 Pac. 667, the Montana Supreme Court elaborately discussed these various phrases, ''chose in action'', ''cause of action'' and ''thing in action'', and it is there said:

''In the common parlance of the law, a thing in action is designated a chose in action. Chose in action means literally thing in action. \* \* \* (Citing cases.) The Supreme Court of the United States has said that a chose in action 'included all debts and all claims for damages for breach of contract or for tort connected with contract.' Bushnell v. Kennedy, 9 Wall. 387, 19 L. Ed. 736. While courts, text-writers, and legislators have not always distinguished sharply between the right to recover and the thing to be recovered, there cannot be any question that the right to recover is comprehended in the term 'chose in action.' \* \* \* In Darlington on Personal Property, p. 9, it is said: 'Choses in action having now become assignable \* \* \* became an important kind of personal property,' and no one would have the temerity at this late day to insist that a chose in action is not property of some character. It is personal property under all of the authorities.'' (Citing cases.)

In the above Montana case two separate actions were commenced against the same defendants. They went to judgment and from the judgment entered in the second action, the defendants appealed, and by stipulation of parties, the judgment in the first action was to abide the decision of the supreme court on the appeal of the second case. The supreme court reversed the judgment in the second case, which, of course, under the

stipulation, reversed the judgment in the first case. The costs of the appeal were awarded to the defendants in the supreme court. A fee bill execution was issued and placed in the hands of the sheriff, who undertook to levy upon (and did sell) the interest of one of the plaintiffs in each of the two causes of action mentioned. Plaintiff, whose interest in said causes of action was sold, then moved the court to set aside the sale and cancel the certificate. Thus arose the discussion in the case as to the right to levy on those causes of action. One of the paragraphs of this case is as follows:

"Since each of Albert W. Ogg's causes of action is a chose in action, and a chose in action is personal property, it follows, by the provisions of section 9424 above, that those causes of action were subject to seizure and sale in satisfaction of the judgment against him."

The Tennessee Court in the case of Smith v. U. S. Fire Ins. Co., 150 S. W. 97 holds that the legislature may make a chose in action subject to levy under execution, and holds that a right of action is subject to levy under execution. To the same effect see Starke v. Beckwith Special Agency, 124 N. E. (N. Y.) 96.

In the case of Johnson v. Dahlquist, 225 Pac. 817, the Washington Supreme Court had before it the identical question we have in this case. It is there said: "* * * the defendants, in an effort to collect their judgment against the plaintiff, undertook to levy on the undetermined and unliquidated claim of indebtedness from themselves to plaintiff. The latter moved to quash the levy: * * * because * * * second, * * * it was unliquidated and intangible; and, third, because it was an indebtedness due from those making the levy."

The trial court denied the motion to quash. After disposing of the question of assignment, the court continued:

"Nor are we of the opinion that the property levied on was such that it was not subject to execution. Section 518, Rem. Comp. Stat., provides that 'all property, real and personal, of the judgment debtor, not exempt by law, shall be liable to execution.' This statute is all inclusive. That a claim of indebtedness is property there can be no doubt. It is said, however, that some property is not subject to execution because the executing

officer cannot, by reason of its nature, take it into his manual possession, and that such is the character of this property. The statutes contemplate that when it is possible to so do the levying officer must take actual possession of the property levied upon, but it does not follow that a levy is insufficient or cannot be made because of the inability of the executing officer to actually take possession of the thing levied on. All that is necessary under such circumstances is that he take it under his dominion— into his constructive possession—by giving notice to the owner of the property that it is levied upon and will be sold. Under the common law, certificates of stock, promissory notes, bonds, and choses in action were not subject to execution; but in most of the states, as here, the common law in this respect has been abrogated by statute. It is competent for a state legislature to make it lawful to levy on and sell any and all kinds of property; consequently, it has been held that notes and other written evidence of indebtedness and choses in action, shares of stock, franchises, licenses to sell intoxicating liquor, and other like properties may be levied on and sold under execution, under statutes similar to ours. (Citing cases.) * * * There is no claim here that the executing officer did not take such possession of and control over the property levied on as its nature was capable of. But it is contended that the respondents should not be permitted to levy upon that which they themselves owe to the judgment debtor. But why not? It is property. It is capable of being transferred. It is capable of being converted into a judgment which is subject to execution. It is an asset of the judgment debtor, and why should not his assets, whatever their nature, be taken to satisfy a judgment? We cannot see any logical reason why such property should not be levied on.''

The difference between levying and garnishing, roughly stated is, that in a levy the sheriff takes actual or constructive possession of the property; whereas in garnishment, the property is left in the possession of the garnishee. That there is a difference between levy and garnishment is recognized in our statutes, as will be seen by reading Sections 11676, 11677, 12099, 12100 and 12101.

It is our conclusion, therefore, under the aforesaid section of our Code (11672) the term ''other things in action'' includes the claim for breach of contract which was set up as a counter-

claim in the action referred to between these parties. Our conclusion therefore is that the action of the district court in issuing this stay order, of which complaint is made herein, was right, but we think when the court issued it, he should have required a reasonably prompt disposition of the case in which this counterclaim was set up, and in this respect his order will be modified by providing said cause shall be brought to trial with reasonable promptness and disposition made thereof. On failure to so dispose of said cause, plaintiffs shall have a right to proceed under the present execution or to the issuance of another execution if the facts warrant the same.—Modified and affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.