FORTGANG BROTHERS, INC., appellee, v. ROBERT W. COWLES, appellant.

No. 49280.

(Reported in 85 N.W.2d 916)

NOVEMBER 12, 1957.

C. F. Neylan, of Elkader, for appellant.

E. L. Gross, of Strawberry Point, for appellee.

LARSON, J.—This suit in equity, alleging an oral agreement between plaintiff and defendant, was transferred to law and tried to the court. Plaintiff's petition alleged under the agreement of about January 1, 1953, "defendant was to purchase eggs from producers in and about Volga, Iowa, and using funds therefor provided by plaintiff" and that "as soon as a quantity of eggs had been accumulated a shipment thereof was to be made to plaintiff and a sight draft" was to be "drawn on plaintiff by (defendant) for the cases of eggs shipped and the bank account of plaintiff would thereby be reimbursed for the cost of the eggs shipped. That all of said eggs were to be candled according to law." The pertinent part of the petition further stated that pursuant to the agreement plaintiff made available to defendant on January 1, 1953, an account in the Volga State Bank in the sum of $3385.70, and that between the dates of January 1, 1953, and June 22, 1953, the defendant purchased 2982 cases of eggs and paid for them from funds provided by plaintiff in the sum of $36,851.99; that during the same period only 2907 cases of eggs were shipped to plaintiff and sight drafts of $36,172.20 drawn on plaintiff therefor; that the difference of $679.79 was unaccounted for and was due plaintiff. An audit was made on or about the 22d of June, 1953, disclosing the shortage. Defendant's answer affirmed the deposit of proceeds in the plaintiff's account

in the amount of $36,172.20 but denies "for want of information" the other material allegations of plaintiff's petition. There were other counts alleging other claims, as well as a defendant counterclaim, but they were not allowed and are not involved in this appeal.

The trial court found for the plaintiff and rendered judgment against the defendant for $679.79 with interest from June 22, 1953, and for costs, and denied all other claims. Defendant appealed. Errors relied upon for reversal were (1) that there was insufficient competent evidence of an agreement presented by plaintiff to prove its contention, and that defendant's motion for a directed verdict at the close of plaintiff's evidence should have been sustained, and (2) that the trial court erred in excluding from consideration defendant's testimony relative to his conversations with one George Fortgang, deceased, plaintiff's representative with whom the transaction had been negotiated.

The death of plaintiff's representative, George Fortgang, a few weeks prior to the trial no doubt made proof of the oral agreement difficult for both parties, but not impossible.

I. It is true generally that the burden of pleading and proving an issue go together. The party who is required to plead an issue has the burden of proving that issue. In re Estate of Ewing, 234 Iowa 950, 955, 14 N.W.2d 633. The true test to determine where is the burden is to consider which party would be entitled to the verdict if no evidence were offered on either side. Veiths v. Hagge, 8 (Clarke) Iowa 163. A material fact may be pleaded either by express averment or by the averment of other facts from which the material fact is a necessary inference. Homire v. Rodgers, 74 Iowa 395, 37 N.W. 972. Clearly from the pleadings and the testimony in this case there was an agreement, and obviously the disputed issue is as to certain terms, i.e., whether the eggs were to be purchased prior to candling or subsequent thereto. The basis of defendant's contention is that plaintiff failed to prove by any competent evidence that the agreement required him to purchase eggs after they were candled.

The trial court did not agree, and in ruling upon defendant's motion to dismiss at the close of plaintiff's evidence, the court said: "* * * the record shows that there was an agreement be-

tween the parties whereby the defendant purchased eggs and shipped them to the plaintiff. * * * I think there is enough evidence here before us to show by reason of the pleadings and the inference as to be drawn from the audit that there was an agreement between the parties, and that there was a shortage in the number of cases of eggs." The ruling was correct.

█ Only reasonable certainty that such an agreement existed need be shown. All minor details need not be proven in the first instance. The degree of definiteness and certainty required has been variously stated. It is said that it must be possible to ascertain the full meaning with reasonable certainty. 12 Am. Jur., Contracts, section 64, page 555. Also see Restatement of Contracts, Volume I, section 32, page 40.

█ Defendant's pleadings admitted an agreement and the only substantial difference in its terms is as to how the eggs were to be purchased from the producer. The method of payment, shipping and compensation is not in dispute. To that extent the court was justified in considering the pleadings. Wigmore on Evidence, Volume IV, Third Ed., section 1058. Also see California Law Review, Volume 42 (1954), pages 356 to 359.

The evidence produced by plaintiff consisted of the testimony of defendant's employee, Roland Burns, who worked at this station from November 1, 1952, to April 1, 1953, and who related the method of purchasing, handling and shipping eggs to the plaintiff, and to other business transactions involving plaintiff's funds. He told how the eggs were purchased at the station and on the route from producing farmers, and were paid for by checks written on plaintiff's bank account. He explained how some of the eggs were candled before payment and some afterward, but did not know whether adjustments in the latter cases were made later. Most of the eggs were graded and shipped to plaintiff in New York, but some were sold to local customers— "approximately six cases"—and cash received for them, part of which he kept for his services, with defendant's approval.

Further evidence was furnished by Mr. M. G. Stebbins, the auditor, who testified as to the quantity of eggs purchased and those shipped over that period and the sums of money furnished

to keep the revolving bank account substantial. Such facts and circumstances, we think, gave rise to a clear inference that a definite agreement existed as alleged in plaintiff's petition and justified the court's action in refusing to direct a verdict for defendant. Considering this evidence most favorable to plaintiff, a prima-facie agreement was established with reasonable certainty.

Plaintiff is entitled to have the most favorable construction that the evidence will reasonably bear, and so if reasonable men might differ on the question as to whether or not such a contract was made as alleged by plaintiff, then a fact or jury question is presented and the motion to direct was properly overruled. We must bear in mind this case involved an oral contract and the plaintiff is entitled to prove it by admissions, conduct or circumstances, and all are properly considered. We said in Peoples State Savings Bank v. Cross, 197 Iowa 750, 754, 198 N.W. 70, 72:

"The jury is not limited to the spoken word alone, under such conditions, but has the right, and is in duty bound, to consider all facts and matters properly admitted in evidence, and to draw therefrom all reasonable inferences, to assist them in arriving at a correct conclusion."

We are convinced that without further evidence the plaintiff would have then been entitled to a judgment for the amount of the shortage. At the conclusion of all testimony the court, acting as a jury, found the plaintiff had established his case by a preponderance of the evidence, that an oral agreement existed under which defendant had not delivered 75 cases of eggs due plaintiff, and that defendant had received 60¢ per case for those delivered. There being sufficient competent evidence to warrant such a determination, it is of course conclusive.

In this connection we note the testimony of Stebbins, the certified public accountant and auditor, who asked defendant for an explanation for the 75-case shortage, and that defendant could not then explain it. It might be inferred therefrom that the spoiled egg defense occurred by reflection, not by anticipation.

II. We now turn to defendant's contention that the agreement permitted him to buy eggs—general run without first

candling them—and that he was to then candle, grade and ship the good salable ones to plaintiff. It is his contention the 75-case shortage represents the rejects, and for these he should not be charged. This contention, while not amounting to a shifting of the burden, does require defendant to go forward with his proof to prevent a judgment against him. Howard & Harper v. Chicago, B. & Q. R. Co., 196 Iowa 1378, 1383, 195 N.W. 153, and cases cited therein; In re Estate of Lundvall, 242 Iowa 430, 46 N.W.2d 535. Defendant testified as to his acts in buying, candling, grading, and shipping eggs under the alleged agreement as well as to the compensation of 60¢ per case. It would seem strange plaintiff would agree to pay current prices for bad eggs, and it must be further noted that if, as defendant contends, he purchased general run eggs before candling and paid for them prior to candling, he was acting in violation of statute. Eggs purchased for resale must be candled, and those unfit for human consumption must be thrown out. Section 196.8, Code of Iowa, 1954, provides:

"Every person buying eggs from the producer for resale shall candle all eggs offered to him and shall refuse to buy eggs unfit for human food as herein defined. * * *."

There is at least a strong implication that the agreement and transactions contemplated were not to be done in violation of that statutory requirement. See 12 Am. Jur., Contracts, section 251, page 793, and citations.

Defendant's attempt to relate the conversation with Mr. Fortgang was objected to, and after admitting it, subject to the objection, the court seems to have rejected the testimony relating to defendant's counterclaim. This was improper. Such testimony is not banned under the so-called "dead man's statute." See Cowan v. Allamakee Ben. Soc., 232 Iowa 1387, 1390, 8 N.W. 2d 433; also 11 Iowa L. Rev. 287. However, a careful review of the record reveals no testimony was offered by defendant, or rejected by the court, as to the amounts alleged due in the denied counterclaim. The error was therefore without prejudice.

Regardless of this contention, the court sitting as a jury heard all the evidence and determined the preponderance of the evidence was in favor of the plaintiff. We think substantial competent testimony and proper inference support this finding,

and we are therefore bound by its determination. If defendant's testimony were to be believed in regard to the intended illegal purchase of eggs, then the agreement could obtain no judicial aid, for when the acts contemplated in the alleged agreement are forbidden by statute judicial aid is usually denied all parties. Dodson v. McCurnin, 178 Iowa 1211, 160 N.W. 927, L. R. A. 1917C 1084, and cases cited; 12 Am. Jur., Contracts, section 209, pages 714, 715, section 159, page 655.

We note further that in determining the true intention of parties to such an agreement, if a contract is susceptible of two meanings, one legal and the other not, that meaning will be given to it which will make the contract legal. Dillon & Palmer v. Allen, 46 Iowa 299, 26 Am. Rep. 145. Aiding plaintiff then is the inference or implication that the parties did not intend an unenforceable agreement, i.e., to illegally buy from producers ungraded eggs. Clearly such an implication was not overcome by a preponderance of the evidence, and defendant's contention must fail.

No error having been found, the judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.