Robert NETTELAND and Kristerin Development Co., An Iowa Corporation, Plaintiffs/Appellees,

v.

FARM BUREAU LIFE INSURANCE COMPANY, Iowa Farm Bureau Federation and Farm Bureau Management Corporation, Defendants/Appellants.

No. 92–1291.

Court of Appeals of Iowa.

Oct. 28, 1993.

Mark S. Lagomarcino and Joseph J. Mowry of Hanson, Bjork & Russell, Des Moines, for appellants.

John R. Hearn, Des Moines, for appellees.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ. DONIELSON, J., takes no part.

HAYDEN, Judge.

This appeal arises from a breach of contract claim brought by Robert Netteland and Kristerin Development Company against Farm Bureau Life Insurance Company (Farm Bureau).

In 1987 Farm Bureau began plans to establish a child day-care center at its West Des Moines office. Farm Bureau established a task force to investigate day-care issues. The task force consisted of employees of Farm Bureau and an officer, Thomas Boyer. Boyer served as the chair of this task force and was the vice president of administrative services. The task force reported to the building project team, who in turn reported to the insurance management team. The insurance management team reported to the management corporation.

The task force contacted several day-care agencies in its investigation. In April or May of 1988 Robert Netteland and his company, the Kristerin Development Company, contacted Farm Bureau and expressed an interest in operating the day-care facility.

Eventually, the management corporation approved the task force's recommendation Farm Bureau enter into negotiations with Netteland. In August 1988 Boyer contacted Netteland informing him of the decision. The extent of the subsequent negotiations between the two parties is contested.

At some point negotiations between the parties began to break down. Apparently, the fighting issue was the rates to be charged by the day-care facility. Farm Bureau contends Netteland called off negotiations at one point because of a dispute over rates. Netteland, however, apparently resumed negotiations within ten or fifteen minutes of the alleged break in negotiations. According to Netteland, he provided Farm Bureau with a written contract detailing his proposed agreement.

On March 14, 1989, Netteland sent a letter including new proposed rates to Farm Bureau. The letter stated "a reduction in the percentage of charges for labor will undoubtedly result in a reduction of the caliber of care." Farm Bureau requested an explanation of this statement. Farm Bureau allegedly ended the negotiations after Netteland refused to respond to this inquiry in a satisfactory manner. In April 1989 Netteland was notified Farm Bureau was going to contract with another provider of day-care services.

Netteland and his company, Kristerin Development, brought suit against Farm Bureau alleging breach of contract, negligence, gross negligence, fraudulent misrepresentation, implied contract, quasi contract, conversion, breach of the covenant of good faith and fair dealing, and estoppel. Netteland alleged an oral contract existed between him and Farm Bureau. Netteland argued the agreement had been breached and he was entitled to lost profits and the value of services rendered. The matter proceeded to a jury trial.

Netteland eventually dismissed all of his claims except the breach of contract and fraudulent misrepresentation claims. After the close of Netteland's case, Farm Bureau moved for a directed verdict. The court directed a verdict on the fraudulent misrepresentation claim in favor of Farm Bureau.

On March 27, 1992, the jury returned a verdict in favor of Netteland and awarded lost profits damages in the amount of $125,000. The district court filed a judgment entry on March 20, 1992. On March 31, 1992, the court granted a motion to extend the deadline for the filing of posttrial motions. Thereafter, Farm Bureau sought a stay of execution. The court granted the stay until three days after its ruling on posttrial motions.

On April 17, 1992, Farm Bureau filed motions for judgment notwithstanding the verdict and new trial. On July 10, 1992, the court denied both motions. Farm Bureau filed a notice of appeal on August 7, 1992. Netteland cross-appeals.

On appeal Farm Bureau contends, inter alia, there was insufficient evidence to submit to the jury the issue of the existence of a contract and lost profits.

 I. *Contract.* The questions of whether an oral contract existed and whether it was breached are ordinarily for the trier of fact. *Dallenbach v. Mapco Gas Prods., Inc.,* 459 N.W.2d 483, 486 (Iowa 1990) (citations omitted). Farm Bureau contends there was insufficient evidence to justify submitting to the jury the issue of whether a contract existed between the parties. Our review is for the correction of errors of law.

 Only a reasonable certainty an oral contract existed need be shown. *Fortgang Bros., Inc. v. Cowles,* 249 Iowa 73, 77, 85 N.W.2d 916, 919 (1957). In other words, the terms must be sufficiently definite to determine with certainty the duties and obligations of each party. *Burke v. Hawkeye Nat'l Life Ins. Co.,* 474 N.W.2d 110, 113 (Iowa 1991) (citing *Severson v. Elberon Elevator, Inc.,* 250 N.W.2d 417, 420 (Iowa 1977)). All minor details of the contract need not be proven in the first instance in order to present the issue for the trier of fact. *Fortgang Bros., Inc.,* 249 Iowa at 77, 85 N.W.2d at 919.

Thomas Boyer testified an oral contract existed between the parties:

Q: So, in other words, Mr. Boyer, you've admitted in your deposition to me that you had an agreement, an oral contract with Mr. Netteland, didn't you, by that deposition, at least? A: By this deposition I indicated that it was, correct.

Q: Okay. So now we've established that you had an oral agreement with Mr. Netteland, haven't we? A: Is that a question?

Q: You bet it is. A: According to this, my answer was correct.

In addition Boyer had submitted in July 1988 a memo to the management corporation recommending "Farm Bureau *contract* for the operation of a Child Care Center with the Robert Netteland organization." (Emphasis added.) Boyer testified the management corporation approved the recommendations in the memo on August 17, 1988.

In the fall of 1988 Netteland contacted Boyer to specifically ask if the parties had a deal with regard to the day-care facility. Netteland testified Boyer told him the management corporation had approved him. When asked what he told Netteland, Boyer testified:

A: I didn't say he was approved.

Q: What did you say? A: I believe I said something to the effect that "You've been selected to run the day-care center. You'll be working with [the architect], something like that.

Netteland testified, stating as a result of Boyer's confirmation he placed a yellow pages ad regarding the facility, hired additional employees, and assisted in the design and construction of the facility. Farm Bureau admitted it knew Netteland was advertising the Farm Bureau child-care center. Farm Bureau admitted it sought Netteland's assistance with regard to the construction and design of the building.

 Terms of an agreement are sufficiently definite if the court can determine with reasonable certainty the duty of each party and the conditions relative to performance. *Burke,* 474 N.W.2d at 113 (citing *Severson,* 250 N.W.2d at 420). Prior to August 1988 Farm Bureau had the current rates or competitive rates of over a dozen local day-care providers. At one point Boyer told Netteland Farm Bureau wanted a ten percent discount on competitive rates. Boyer admitted at trial Netteland had agreed to lower his rates by ten percent for the first year.

 The parties involved in these negotiations were skilled, experienced businesspersons and fully understood the implications of what they agreed upon. We believe the terms were sufficiently complete when given those reasonable interpretations ordinary businesspersons are willing to give considering the surrounding circumstances. *See Severson,* 250 N.W.2d at 421 (citation omitted).

The district court properly determined the terms of the contract were established with reasonable certainty. The court did not err in submitting to the jury the issue of whether a contract existed and whether it had been breached. We affirm on this issue.

II. *Statute of Frauds.* Farm Bureau contends Netteland was barred from introducing evidence supporting an oral contract because the statute of frauds applied. Farm Bureau bases its claim upon Iowa Code section 622.32(4) (1991), contending the contract being negotiated was for a five-year period. Iowa Code section 622.32 provides, in pertinent part:

> Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by the party's authorized agent:
>
> (4) Those that are not to be performed within one year.

Iowa Code § 622.32(4) (1991). The statute of frauds is a rule of evidence, not of substantive law, and relates to the manner of proof but does not render oral contracts invalid. *Johnson v. Ward*, 265 N.W.2d 746, 747–48 (Iowa 1978); *Stauter v. Walnut Grove Prods.*, 188 N.W.2d 305, 313 (Iowa 1971) (citations omitted). We hold plaintiffs may avoid the impact of the statute of frauds and properly introduce evidence of the oral contract. *See Gardner v. Gardner*, 454 N.W.2d 361, 363 (Iowa 1990).

> Under our statute of frauds, it is well established that a party who partially performs under the agreement may avoid the impact of the statute of frauds and introduce evidence of the oral contract.

*Id.* (citations omitted). Our courts have recognized any conduct, acts, or circumstances offered to show "part performance" in order to bring a case within the exception of the statute of frauds must be referable exclusively and unequivocably to the contract. *In re Lindsey's Estate*, 254 Iowa 699, 711, 118 N.W.2d 598, 605 (1962) (citations omitted); *see also Knight v. Anderson*, 292 N.W.2d 411, 417 (Iowa 1980).

In this case Netteland hired employees to staff the new facility and presented a director to Farm Bureau. The language of the alleged agreement specifically required Netteland to provide staff necessary to conduct operation of the child day-care center. It also restricted Netteland's selection of a director for the center. A director could not be selected over Farm Bureau's prior written objection. Boyer testified specifically to this provision regarding a director.

Q: Okay. And so now we have [Netteland] working with the architect, gearing up staff, advertising—Oh, one of the parts of your whatever with Mr. Netteland was you had a right to approve the director, didn't you? A: Not approve. We had asked—I guess you would say requested that Farm Bureau have the opportunity to chat with, interview with any subsequent director, and if we did not feel that person was, in our opinion, who we would like to have, then we could exercise the right to reject.

Q: All right. Okay. But that was part of your arrangement, whatever it was, with Mr. Netteland; correct? A: That's correct.

Q: And, in fact, you did interview a person he lined up to be director, didn't you? A: Following Judy Miller's leaving, yes, we did.

Q: And you met with Cyndee Kusy, and you interviewed her to determine whether you wanted her to be the director out there, didn't you? A: We talked with her, interviewed her, whatever term you would like to use, yes, we did.

We determine these acts were done by Netteland in accordance with the agreement. This constituted partial performance by the parties. Therefore, the statute of frauds is not applicable because the partial performance was sufficient to avoid the impact of the statute of frauds and allow the admission of parol evidence. *See Gardner*, 454 N.W.2d 361; *Knight*, 292 N.W.2d 411; *In re Lindsey's Estate*, 118 N.W.2d 598. We determine the district court properly admitted parol evidence under the exception to the statute of frauds. We affirm on this issue.

III. *Lost Profits.* Farm Bureau objected to the submission of an instruction on lost profits on the ground the amount of the

profits was speculative. The court overruled the objection.

On appeal Farm Bureau argues Netteland failed to present any evidence which could form the basis for determining lost profits. Our review is for the correction of errors of law. Iowa R.App.P. 4.

In order to recover for lost profits, damages may not be overly speculative. *Kansas City Life Ins. Co. v. Hullinger*, 459 N.W.2d 889, 897 (Iowa App.1990) (citing *Jamison v. Knosby*, 423 N.W.2d 2, 6 (Iowa 1988)). The reasonable certainty of the lost profits must be shown. *Brown Township Mut. Ins. Ass'n v. Kress*, 330 N.W.2d 291, 299–300 (Iowa 1983) (citations omitted).

In *Shinrone, Inc. v. Tasco, Inc.*, the Iowa Supreme Court approved the following statement:

> When the profits which are sought are those arising out of the breached contract, those profits ... are presumed to have been in the contemplation of the defaulting party at the time he entered into the contract, and are recoverable if proved with reasonable certainty.

*Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 286 (Iowa 1979); *see* 22 Am.Jur.2d *Damages* § 630 (1988).

It is only essential Netteland present such evidence as might reasonably be expected to be available under the circumstances. *See Page County Appliance Ctr. v. Honeywell*, 347 N.W.2d 171, 178 (Iowa 1984) (citing Restatement (Second) of Torts § 912 cmt. d (1979)). The record reveals factual basis for which to calculate lost profits with reasonable certainty. Netteland explained the source of the facts upon which he relied in calculating his lost profits. Netteland's projections of profitability were based on rates of other providers which had been compiled by Farm Bureau's task force, costs of supplies, food, and employees' salaries which Netteland calculated based on his experience in the business. Netteland also explained how he determined lost profits. Netteland testified how he calculated gross revenues and then subtracted expenses to reach his profits figures.

We determine the evidence in the record was sufficient to submit to the jury the issue of lost profits as the result of the alleged breach of contract. We conclude the district court did not err. We affirm on this issue.

IV. *Motion for Continuance.* Farm Bureau contends the district court abused its discretion in overruling its motion for continuance. Our standard of review on this issue is abuse of discretion. *Bell v. Iowa Dist. Court*, 494 N.W.2d 729, 731 (Iowa App. 1992).

Farm Bureau contends they were unfairly prejudiced by Netteland's discovery abuses and the district court's failure to grant them a continuance as the result of these abuses. Farm Bureau contends the discovery abuses included a failure to comply with a pretrial scheduling order and resulted in their inability to adequately prepare for trial.

Trial courts have broad discretion in ruling on motions for continuance. *Rattenborg v. Montgomery Elevator Co.*, 438 N.W.2d 602, 605 (Iowa App.1989) (citations omitted). We will not interfere absent a clear showing of abuse. *In re Marriage of Hatzievgenakis*, 434 N.W.2d 914, 916 (Iowa App.1988) (citations omitted). A district court's ruling on a motion for a continuance is presumptively correct, and a party challenging the ruling has a heavy burden to overcome the presumption. *Rattenborg*, 438 N.W.2d at 605. Farm Bureau must also show substantial justice will more nearly be obtained by granting a continuance. *Bell*, 494 N.W.2d at 731 (citing *State v. Miller*, 480 N.W.2d 894, 895 (Iowa 1992)). We determine Farm Bureau has not shown the district court abused its discretion in denying the motion. We affirm on this issue.

V. *Motion for New Trial.* Farm Bureau contends the district court erred in overruling its motion for a new trial. Defendants argue the totality of the circumstances combined to effectively deny them a fair trial.

The trial court has broad discretion to grant or deny a new trial motion. *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 13 (Iowa 1990); Iowa R.App.P. 14(f)(3). We will not set aside the district court's ruling in the

absence of a clear showing of abuse of discretion. *Kiner*, 463 N.W.2d at 13.

We determine the district court did not abuse its discretion in denying Farm Bureau's motion for a new trial. We affirm on this issue.

VI. *Cross–Examination.* Farm Bureau maintains the district court erred in limiting its cross-examination of plaintiff Netteland regarding his history of filing lawsuits and the experience he gained as a witness. The district court sustained plaintiff's objection based on relevancy.

■ The scope of cross-examination is within the trial court's discretion. We reverse for an abuse of discretion and then only if it appears prejudice resulted. *Avery v. Harms Implement Co.*, 270 N.W.2d 646, 649 (Iowa 1978); *see Lund v. McEnerney*, 495 N.W.2d 730, 734 (Iowa 1993).

■ The district court ruled Netteland's involvement in other unrelated litigation and his testimony was not relevant to the issues involved in this case. We determine the district court did not abuse its discretion in sustaining plaintiff's objection based on relevancy. We affirm on this issue.

■ VII. *Interrogatories.* Farm Bureau argues the district court abused its discretion in failing to submit four special interrogatories to the jury. We review for an abuse of discretion. Iowa R.App.P. 4.

Farm Bureau requested the jury be given four special interrogatories concerning whether they believed a contract existed, whether the contract had been breached, whether Netteland was entitled to lost profits, and the extent of the lost profits. Farm Bureau alleged these interrogatories were necessary to ensure the jury understood the limited issues with which it was confronted. The court refused to submit the interrogatories.

■ The submission of interrogatories is within the discretion of the trial court. *Six v. Freshour*, 231 N.W.2d 588, 594 (Iowa 1975). The court stated the interrogatories would not be helpful to the jury. We determine the district court did not abuse its

discretion in refusing to submit the interrogatories. We affirm on this issue.

On cross-appeal Netteland raises two issues: (1) Farm Bureau waived its right to appeal by staying execution in the district court, and (2) the district court erred in directing a verdict on plaintiff's fraud claim.

■ VIII. *Waiver.* Netteland contends defendants waived their right to appeal by obtaining a stay of execution. Netteland cites Iowa Code section 626.60 in support of his argument. The section provides: "No appeal shall be allowed after a stay of execution has been obtained." Iowa Code § 626.60 (1991).

We set forth the proceedings surrounding the stay of execution. On March 30, 1992, the district court filed a judgment entry of the jury's verdict. The next day Farm Bureau filed a motion to extend time to file posttrial motions. The district court extended the filing deadline to April 17, 1992. On April 6, 1992, Farm Bureau filed a motion for a stay of execution pursuant to Iowa Rule of Civil Procedure 246. The district court granted the stay, stating all further proceedings were to be "stayed for a period of three days beyond the filing of this Court's ruling upon defendants' post trial motions." Farm Bureau later filed motions for judgment notwithstanding the verdict and new trial. The court filed its ruling on Farm Bureau's posttrial motions on July 10, 1992, denying both motions. Farm Bureau later appealed.

In *Brenton Brothers v. Dorr*, the Iowa Supreme Court recognized three types of stays of execution:

[F]irst, those which are ordered by the court in which the judgment was rendered, but not as the result of any appellate proceedings, and which proceed upon the ground that, for some cause, the execution of the judgment ought to be postponed to some subsequent date, or, perhaps, ought not to take place at all; second, those which are a consequence of, or attend, appellate proceedings; and third, those which result from statutes [Iowa Code section 626.58] granting the defendant a further time in which to satisfy the judgment upon his giving certain security therefor.

Each court has such general control of its process as enables it to act for the prevention of all abuse thereof.

*Brenton Bros. v. Dorr,* 213 Iowa 725, 728, 239 N.W. 808, 809–10 (1931) (citations omitted).

This case involves the first class of stay. The stay "arises out of and by reason of the supervisory power of the court over its own process, and is available whenever it is necessary to accomplish the ends of justice." *Id.* at 729, 239 N.W. 808, 810. This stay "is always a discretional matter with the court, and will not be reversed by this court unless the power to issue the same is capriciously exercised or abused." *Id.* (citations omitted). Iowa Rule of Civil Procedure 246 provides further guidance on the stay. The rule states:

> If motions under R.C.P. 243 [judgment notwithstanding verdict] or 244 [new trial] or petition under R.C.P. 252 [judgment vacated or modified] are timely filed, the court may, in its discretion and on such terms, if any, as it deems proper order a stay of any or all further proceedings, executions or process to enforce the judgment, pending disposition of such motion or petition.

Iowa R.Civ.P. 246. Farm Bureau filed post-trial motions on April 17, 1992. The district court later granted a stay of execution which was to last until three days after it ruled on the motions. The court ruled on the motions on July 10, 1992. The stay of execution expired three days later. On August 7, 1992, Farm Bureau filed a notice of appeal.

Farm Bureau did not seek an appeal while the stay was in existence. Iowa Rule of Civil Procedure 246 allows for a stay in order that the court may address such posttrial motions. The district court properly followed rule 246 and case law. *See* Iowa R.Civ.P. 246; *Dorr,* 213 Iowa at 728–29, 239 N.W. at 809–10. Farm Bureau did not acquire the advantage of a significant delay in the proceedings based on the stay. We have found no case in which our courts have interpreted or applied Iowa Code section 626.60 so to prohibit an appeal after a trial court has stayed an execution for the purpose of disposing with posttrial motions. We determine under the circumstances and facts of this case Farm Bureau did not waive its right to appeal.

IX. *Directed Verdict.* In reviewing whether the district court was correct in directing a verdict on Netteland's fraud claim we must determine whether substantial evidence supports every element of the claim. *Swanson v. McGraw,* 447 N.W.2d 541, 543 (Iowa 1989). Evidence is considered in the light most favorable to the party against whom the motion is directed. *Id.* Evidence is substantial if a jury could reasonably infer from it the existence of every element of the claim. *Id.* If the evidence is not substantial, a directed verdict is appropriate. *Id.* The trial court is vested with considerable discretion in determining whether evidence is sufficient to submit an issue to the jury. *Business Ventures, Inc. v. Iowa City,* 234 N.W.2d 376, 383 (Iowa 1975).

The district court directed a verdict because there was not substantial evidence to support the fraudulent misrepresentation claim. We agree and affirm.

Costs of this appeal are assessed one-third to appellees and two-thirds to appellants.

**AFFIRMED.**

OXBERGER, C.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part.

Plaintiffs recovered damages for defendants' alleged breach of an alleged contract for plaintiffs to supply child care services for defendants' employees. Defendants have appealed and plaintiffs have cross-appealed. I would reverse on defendants' appeal and affirm on plaintiffs' cross-appeal. I would dismiss the case.

Plaintiffs' claim is based on an oral contract. The primary issue in this appeal is whether there was substantial evidence to support a finding plaintiffs and defendants had entered into a binding five-year oral contract. I cannot agree with the majority

that there was substantial evidence to support such a finding.

Defendants have raised the issue of statute of frauds, contending the statute precludes the enforcement of a five-year oral contract. The parties clearly intended to ultimately be bound by a written document. The plaintiffs' contention the statute of fraud precludes enforcement has merit. *See Marti v. Ludeking,* 193 Iowa 500, 504, 185 N.W. 476, 478 (1921).

A number of drafts of a contract passed between the parties. These contracts addressed rates, termination, the parties to the contract, approval of the director, maintenance of the premises, and the effect of regulatory standards.

While there was an agreement contingent on reaching an agreement, there clearly was never a meeting of the minds. An agreement to contract in the future is not a contract. *See Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n,* 464 N.W.2d 450, 453 (Iowa 1990).

Most significantly, I find no evidence of a meeting of the minds of the price that would be charged for child care, obviously one of the most significant aspects of the contract. I find no evidence of an agreed price. I also find no agreement as to a defined formula for increases in charges.