**IN THE COURT OF APPEALS OF IOWA**

No. 13-1801
Filed August 13, 2014

**THOR MANUFACTURING, L.L.C.,**
    Plaintiff-Appellee,

**vs.**

**CEDAR RIVER POULTRY, L.L.C.**
**d/b/a CEDAR RIVER POULTRY,**
    Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Floyd County, Paul W. Riffel,

Judge.


        Cedar River Poultry appeals the district court's judgment for Thor

Manufacturing on a breach-of-contract claim.  **AFFIRMED.**



        Gary D. McKenrick of Cartee & McKenrick, P.C., Davenport, for appellant.

        Roger L. Sutton of Sutton Law Office, Charles City, for appellee.



        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Cedar River Poultry (Poultry) appeals the district court's judgment for Thor Manufacturing (Thor) on a breach-of-contract claim. Poultry claims Thor has not proved the necessary contract element of mutual assent and, consequently, insufficient evidence exists to support the district court's breach-of-contract finding. We affirm the district court's decision entering judgment for Thor, finding the evidence presented at trial was sufficient to support the existence of an oral contract.

**I. Background Facts and Proceedings.**

The following findings of fact by the district court are supported by substantial evidence in the record. Thor is a metal fabricating facility primarily engaged in manufacturing hydronic heating systems and outdoor wood furnaces. When production slows each year, owner Vincent Rottinghaus seeks custom manufacturing jobs to provide work for his employees. In February 2012, Rottinghaus contacted Poultry's general manager, Gary Shank, and live bird buyer, Ray Avila, for possible outside work. Poultry was negotiating with a buyer in China at the time and was in the market for customized battery cages used to transport spent hens.

In early March, Rottinghaus, Shank, and Avila began discussing design specifications for the cages. Over the next week or two, Thor constructed a prototype cage under Poultry's direction. Once the prototype was satisfactorily completed, Rottinghaus and Shank began negotiating a price for the cages. The two eventually settled on a price of $500 per cage. With Avila, Shank, Rottinghaus, and Rottinghaus's son Benjamin present at Thor's facility,

Rottinghaus and Shank agreed on the price and shook hands. Thor thereafter began manufacturing the cages. While there was discussion that several hundred cages might be needed, Rottinghaus testified that Thor was first tasked with building fifty cages. Rottinghaus testified that with the large sale impending, Poultry expressed an immediate need for the cages. He also testified Poultry representatives visited and inspected the cages on numerous occasions during the manufacturing process and gave approval.

Avila called Rottinghaus on March 19, 2012, and told him to stop production of the cages because Poultry was having difficulty obtaining certification to ship chickens to China. At this time, Thor had completed approximately thirty cages and had the materials prepared for another twenty. Around April 19, 2012, Avila told Rottinghaus that Poultry would not be buying any cages from Thor. Avila then e-mailed Rottinghaus a list of other possible buyers for the completed cages. Thor was eventually able to sell the fifty cages for $240 per cage but spent $2800 preparing the cages for sale, receiving a net of $9200.

In August 2012, Thor brought suit against Poultry, requesting damages at $475 per cage—the price at which Thor invoiced Poultry. Poultry denied the existence of a valid contract. The court found an oral contract did exist and entered judgment in favor of Thor for $14,550—the invoiced total of $23,750 less the money Thor received from the eventual sale of the cages.

Poultry appeals, contending there was no mutual assent to an agreement due to indefinite terms, as evidenced by ongoing discussions regarding price, material, and quantity of the cages.

**II. Standard of Review.**

This case was tried at law, and our review is for the correction of errors at law. Iowa R. App. P. 6.907. The district court's factual findings are binding on appeal if supported by substantial evidence. Iowa R. App. P. 6.904(3)(a). Evidence is substantial when "reasonable minds would accept the evidence as adequate to reach the same findings." *Easton v. Howard*, 751 N.W.2d 1, 5 (Iowa 2008).

**III. Discussion.**

**Sufficient Evidence.**

Iowa Code section 554.2204(1) (2011) states, "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." This agreement can constitute a contract even when the moment of making is undetermined. *Id.* § 554.2204(2). As observed by the district court:

> As a general rule, a contract for the sale of goods for the price of $500 or more is not enforceable unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or that party's agent or broker. Iowa Code § 554.2201(1). However, a contract which is not in writing but which is valid in all other respects is enforceable if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement. Iowa Code § 554.2201(3)(a).

Here, there is no dispute Thor specifically manufactured cages for Poultry. Any contract concerning the sale of cages between Thor and Poultry therefore

falls under Iowa Code section 554.2201(3)(a) and is not barred by the lack of writing.

Poultry contends there was insufficient evidence to support the district court's finding there existed an oral contract between Thor and Poultry due to the lack of mutual assent. To establish the existence of an oral contract, only a reasonable certainty of the contract's existence need be shown. *See Netteland v. Farm Bureau Life Ins. Co.*, 510 N.W.2d 162, 165 (Iowa Ct. App. 1993). "[T]he terms [of the agreement] must be sufficiently definite to determine with certainty the duties and obligations of each party." *Id*. For terms to be considered sufficiently definite, the court must be able to "determine with reasonable certainty the duty of each party and the conditions relative to performance." *Id*. This standard was met here.

The district court concluded Poultry, as a buyer, entered into an oral contract with Thor, the seller, for the purchase of fifty cages at the price of $500 each, though Thor—as a gesture of goodwill—invoiced Poultry at a price of $475 per cage. Substantial evidence supports the court's findings. Thor and Poultry communicated numerous times about the production and sale of the cages. Both parties agree the handshake signified assent, but Poultry argues it was assent to the agreed-upon price and was not an assent to purchasing any cages. Rottinghaus and his son Benjamin testified the handshake was Poultry's assent to buy fifty cages at $500 per cage.

The district court found Rottinghaus's testimony more credible. Poultry maintaining a close working relationship and visiting Thor numerous times after the handshake, and Thor's subsequent manufacture of the first thirty cages,

supports Rottinghaus's position that Poultry had assented to and entered into an oral contract with Thor.

The district court determined the evidence aligned more logically with Rottinghaus's and Benjamin's testimony. Giving the proper deference to the district court's credibility determinations, and viewing the evidence in the light most favorable to uphold the court's judgment, we conclude there is substantial evidence to support the district court's judgment and affirm. *See Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988).

**AFFIRMED.**