Leo P. "Pat" McGOUGH, Jr., Teresa McGough, Jeanne McGough, and Leo McGough, All Individuals; and McGough Enterprises, Inc., A Corporation, Appellees,

v.

Charles GABUS and Gene Gabus, Individuals; and Charles Gabus Ford, Inc., A Corporation, Appellants.

No. 93–330.

Supreme Court of Iowa.

Jan. 18, 1995.

As Amended on Denial of Rehearing Feb. 28, 1995.

Stephen R. Eckley of Duncan, Green, Brown, Langeness & Eckley, Des Moines, for appellants.

John R. Hearn, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

The defendants appeal, and the plaintiffs cross-appeal, from judgments in this fraud suit arising out of the sale of a vending machine business. We affirm in part and reverse in part on the appeal, reverse on the cross-appeal, and remand.

The defendants, Charles Gabus, Gene Gabus, and Charles Gabus Ford, Inc. are involved in the retail automobile business in Des Moines. (In most instances, we will collectively refer to the defendants as Gabus.)

A former employee, who had embezzled a substantial amount of money from Gabus, proposed that he partially reimburse the loss by conveying to Gabus a corporation called "Duggie Enterprises," a vending machine business in the Des Moines area. Before agreeing to this proposal, Gabus hired an appraiser to set a value on Duggie. Using this appraisal, Gabus sought a buyer and ultimately sold the business to Leo P. McGough for $190,000.

Soon after McGough began operating Duggie, he discovered that the business required much more of his time than had been represented. Many of the machines were broken. McGough did not get contracts to put machines at Charles Gabus Ford and Charles Gabus Suzuki, as the sellers had promised. McGough discovered that gross sales were only about one-half what the sellers had told him and that Gabus had substantially overstated the appraisal. McGough sued Gabus for fraudulent misrepresentation.

The jury returned verdicts against all three defendants as follows: (1) $216,645 for benefit-of-the-bargain damages; (2) $107,729 for operating losses; and (3) $71,113 for lost profits. It also assessed punitive damages against Charles for $135,000 and against Gene for $25,000. The trial court granted the defendants' motion for judgment notwithstanding the verdict and withdrew the punitive damage awards. It denied the defendants' motion for a new trial and entered judgment on the remainder of the jury's verdicts. The defendants appeal. McGough cross-appeals to reinstate the punitive damage awards and to recover additional interest.

The issues on the direct appeal include: (1) waiver of the right to appeal, (2) the sufficiency of the evidence, (3) the damage awards, and (4) the court's denial of a new trial. The plaintiffs' cross-appeal challenges the court's striking of the punitive damage awards and its refusal to award prefiling interest.

I. *The Waiver Issue.*

■ The threshold issue, raised by the plaintiffs, is whether the defendants have waived their right of appeal by obtaining a stay. Iowa Code section 626.60 states that "[n]o appeal shall be allowed after a stay of execution has been obtained." The district court granted the defendants a stay under Iowa Rule of Civil Procedure 246:

If motions under R.C.P. 243 [judgment notwithstanding verdict] or 244 [new trial] or petition under R.C.P. 252 [modification or vacation of judgment] are timely filed, the court may, in its discretion and on such terms, if any, as it deems proper order a stay of any or all further proceedings, executions or process to enforce the judgment, pending disposition of such motion or petition.

The language of section 626.60 appears to make no exception to the waiver rule, nor does it differentiate among different types of stay. Our cases, however, have recognized that there are different types of stays.

These stays of execution may be regarded as of three classes, first, those which are ordered by the court in which the

judgment was rendered, but not as the result of any appellate proceedings, and which proceed upon the ground that, for some cause, the execution of the judgment ought to be postponed to some subsequent date, or, perhaps, ought not to take place at all; second, those which are a consequence of, or attend, appellate proceedings; and, third, those which result from statutes granting the defendant a further time in which to satisfy the judgment upon his giving certain security therefor. Each court has such general control of its process as enables it to act for the prevention of all abuse thereof.

*Brenton Bros. v. Dorr,* 213 Iowa 725, 728, 239 N.W. 808, 809–10 (1931) (quoting I Abraham Clark Freeman, *Law of Executions* § 32, at 115 (3d ed. 1900)); *accord* 30 Am.Jur.2d *Executions* § 383, at 258 (1994).

We have held that a general stay under what is now Iowa Code section 626.58 waives the right of appeal, *Seacrest v. Newman,* 19 Iowa 323, 324 (1865), but we have not previously construed the waiver language of Iowa Code section 626.60 in the case of a stay granted under rule 246. The court of appeals has addressed this specific issue and resolved it against waiver. *See Netteland v. Farm Bureau Life Ins. Co.,* 510 N.W.2d 162, 168–69 (Iowa App.1993).

Section 626.58, a general stay statute, provides that:

> On all judgments for the recovery of money [with certain exceptions not applicable], there may be a stay of execution, if the defendant therein shall, within ten days from the entry of judgment, [provide a sufficient bond].

While a stay under this statute will waive the right of appeal, as held in *Seacrest,* we do not believe that stays under rule 246 are subject to the same waiver provision. We are led to that conclusion by (1) the physical location of section 626.58, only two subsections away from section 626.60; (2) the general rule that appeals are favored by the law, and waivers must be "clear and decisive," 4 C.J.S. *Appeal and Error* § 184, at 254 (1993); and (3) the desirability of allowing adequate time, through a stay, to dispose of posttrial motions without losing the right of appeal.

## II. *Sufficiency of the Evidence.*

■ Fraud must be established by clear, satisfactory, and convincing evidence. *Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 155 (Iowa 1984); *Lockard v. Carson,* 287 N.W.2d 871, 873–74 (Iowa 1980). The elements of fraud are: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) justifiable reliance, and (7) resulting injury and damage. *Garren v. First Realty Ltd.,* 481 N.W.2d 335, 338 (Iowa 1992); *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987).

The plaintiffs alleged that Gabus fraudulently misrepresented the value of the business, its assets, monthly income, and the quantity and quality of its vending machines.

Gabus concedes the first three elements of fraud: misrepresentation, falsity, and materiality, but it challenges the adequacy of the evidence on the elements of scienter, intent to deceive, and justifiable reliance.

■ *A. Scienter.* A plaintiff can establish scienter, or knowledge of the falsity of a material representation, by showing that the defendant had actual knowledge of the falsity, possessed reckless disregard for the truth, falsely stated or implied that the representations were based on personal knowledge or investigation, or had a special relationship with the plaintiff and therefore had a duty to disclose. *Cornell,* 408 N.W.2d at 375–76; *Beeck,* 350 N.W.2d at 155.

■ The jury could have found that Gabus had actual knowledge of the falsity; Charles requested the appraisal and talked with the appraiser "about ten times" about how to interpret it.

The jury also could have found that Gene Gabus acted with a reckless disregard for the truth when he represented that the business was worth over $304,000. (The appraisal received by Charles Gabus had set the total value substantially lower.) *See Beeck,* 350 N.W.2d at 155 (requirement of scienter met if evidence shows the representations were made in reckless disregard of their truth or falsity). Gabus knew that the initial seller, a former employee, was an embezzler. Also,

they considered him untrustworthy and prone to exaggerate Duggie's value, yet they did not question the employee's figures when he gave them to the appraiser. The inference is that Gabus could benefit in a later sale by a high appraisal.

Gabus stated at trial that he innocently, but mistakenly, read the appraisal. However, "[a] false statement innocently but mistakenly made will not establish intent to defraud, but when recklessly asserted, it will imply an intent to defraud." *Id.* (quoting *Grefe v. Ross*, 231 N.W.2d 863, 867 (Iowa 1975)). There was clear and convincing evidence on which to find scienter.

■ B. *Intent to deceive.* There must also be clear and convincing evidence of Gabus's intent to deceive McGough to induce him to buy the business. *Cornell*, 408 N.W.2d at 374.

The evidence was sufficient to establish that Gabus intentionally deceived McGough concerning Duggie's value, projected income, and minimal labor requirements and that McGough was thereby induced to buy the business.

■ C. *Justifiable reliance.* Generally, a plaintiff may rely on the owner of property as to its worth, even though the opinion is that of the opposing party in a bargaining transaction. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 109, at 761 (5th ed. 1984) [hereinafter *Prosser and Keeton* ]. Gabus argues that McGough's reliance was not justifiable because McGough had ample opportunity to discover the value of the business. He points out that McGough viewed Duggie's old tax returns, inspected the machines before closing, and had an opportunity to view Duggie's balance sheets and income statements.

Gabus argues that had McGough viewed these documents carefully, he would have seen that (1) vending sales for the first nine months of 1990 were $117,846, not $170,000; (2) vending sales for September 1990 were $12,246, not $18,000; and (3) net income for the first nine months of 1990 was merely $3401.13.

A plaintiff cannot recover if he "blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Lockard*, 287 N.W.2d at 878; *accord* Restatement (Second) of Torts § 541 cmt. *a* (1977). Nevertheless, we have refused to impose an objective standard of ordinary care on plaintiffs in fraud actions. *Lockard*, 287 N.W.2d at 878. The standard is "whether the complaining party, in view of his own information and intelligence, had a right to rely on the representations." *Id.*

We conclude that sufficient evidence supported the jury's finding on the element of reliance, based on what Gabus had represented to McGough.

### III. *Damages.*

The jury was instructed on three claims of damages: the benefit of the plaintiff's bargain, operating losses, and loss of profits. The defendants object only to the second and third claims.

A. Gabus contends that it was error to submit operating losses as an element of damages on two grounds. First, he complains there was insufficient evidence to support this award, but we disagree. Substantial evidence was introduced to show these losses.

■ Gabus also contends this instruction erroneously allowed the jury to allow losses occurring after the plaintiff discovered the fraud. This argument is based on the notion that one who learns that a fraud has been perpetrated should not be protected if he puts more money into the project. *See Bowen v. Aetna Indem. Co.,* 160 Iowa 548, 551, 142 N.W. 205, 206 (1913). Gabus objected on the ground that this award should not have been submitted because there was insufficient evidence of proximate cause. However, this was not sufficient to preserve the legal error that he now asserts, *i.e.,* that as a matter of law recovery cannot be allowed for damages occurring after discovery of the fraud.

B. The award for lost profits is challenged on the grounds that it lacked sufficient evidentiary support and duplicated damages that were already an integral part of the benefit-of-the-bargain claim. The duplication problem has been discussed by one writer:

Ordinarily, in the case of fraud in the acquisition of a business or property, if the basic measure is benefit of the bargain, the value as represented would in all likelihood

cover defendant's false predictions as to the profit potential, and an instruction on lost profits would be superfluous if not inviting double recovery.

Graham Douthwaite, *Jury Instructions on Damages in Tort Actions* § 15–7, at 648 (1988).

Although the defendant's objection to the lost-profit instruction was not clear, we believe it at least minimally alerted the court to the problem. The objection stated in part:

> [If lost profits] are submitted, they should be submitted only as consequential damages over and above the benefit of the bargain. The benefit of the bargain only includes the value of the business at the time it was sold subtracted from the value of the business as it was represented to be. *In calculating this the value as set includes profitability of a business, and, therefore, we object to the lost profits instructions being submitted in the manner they are submitted.*

(Emphasis added.)

■ We agree with Gabus that expected profits were an integral part of the represented value of the business, and that a separate instruction on lost profits should not have been given. Although the court instructed the jury that it should not allow double recovery under the instructions, the instructions were set up in such a way that duplication was likely, and the cautionary instruction was not sufficient to cure the problem. *See Salter v. Heiser*, 39 Wash.2d 826, 239 P.2d 327 (1953).

> While it is unquestionably true that the fraud may result in a loss in operating a business, where, had the state of things been as represented, it would have returned a profit; that element of damages is reflected in the difference in values computed under the "benefit of bargain" measure of damages.

*Id.* at 833, 239 P.2d at 332; *accord Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1342 (9th Cir.1976); *D'Alessandro v. Hooning*, 365 Mich. 66, 78, 112 N.W.2d 114, 120 (1961); *Ungewitter v. Toch*, 294 N.Y.S.2d 1013, 1015, 31 A.D.2d 583, 584 (1968).

IV. *The New Trial Issues.*

During the trial, the plaintiff referred to Gabus's receipt of insurance proceeds in connection with the embezzlement and introduced evidence of the defendant's wealth. Gabus contends these were errors so substantial as to require a new trial.

■ Rulings on such matters are highly discretionary, and we review only for abuse of that discretion. *See Ladeburg v. Ray*, 508 N.W.2d 694, 696 (Iowa 1993).

■ The trial court permitted the plaintiff to establish that Gabus had received $100,000 in insurance proceeds to cover part of its embezzlement loss. Gabus argues that evidence regarding its insurance recovery might suggest to the jury that Gabus also had liability insurance to cover claims of fraud against it. This argument is highly speculative, and we do not believe the trial court abused its discretion in denying a new trial.

■ Gabus also complains that it was prejudiced by the plaintiff's introduction of evidence concerning the parties' relative financial conditions.

Prior to the trial, Gabus moved in limine to exclude testimony that, in order to buy Duggie, plaintiff gave up a high-paying job in California, sold his home, liquidated his retirement savings, sent his wife off to work, and moved into his parents' home. The court denied Gabus's motion, but sustained several relevancy objections made during the trial. Gabus now contends that, despite the sustention of the motions, the jury heard and sympathized with McGough's lack of wealth.

In *Berg v. Des Moines General Hospital Co.*, the court stated that "generally, improper testimony is not unduly prejudicial if the jury is admonished to disregard it [but that] ... instances [exist] ... when improper testimony is so prejudicial that an admonition to disregard it is an improper curative." 456 N.W.2d 173, 178 (Iowa 1990). We believe the court's instruction limiting the use of the financial evidence to the punitive damage issue was sufficient to cure any problem.

## V. *The Punitive Damage Issue.*

The jury awarded McGough punitive damages against Charles Gabus for $135,000 and Gene Gabus for $25,000. The court, however, granted Gabus's motion for judgment notwithstanding the verdict as to the punitive damage awards and set them aside.

When reviewing a motion for a judgment notwithstanding the verdict, we consider whether the evidence, taken in the light most favorable to the nonmoving party, regardless of whether the evidence was contradicted, and every legitimate inference that may be fairly or reasonably deduced therefrom, shows that the movant was entitled to a directed verdict at the close of all the evidence.

*Hillrichs v. Avco Corp.*, 514 N.W.2d 94, 100 (Iowa 1994) (citing *Beeman v. Manville Corp. Asbestos Disease Compensation Fund,* 496 N.W.2d 247, 255 (Iowa 1993)). In reviewing such a ruling, we look to see whether the evidence on an issue was sufficient to generate a jury question. *See Nesler v. Fisher & Co.*, 452 N.W.2d 191, 193 (Iowa 1990).

The trial court set aside the punitive damage awards because it determined that Gabus's fraud was "simple, not aggravated," and therefore, the defendants' level of culpability fell short of that which is necessary to sustain an award of punitive damages. It cited *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 214 (Iowa 1980) (exemplary damages appropriate if plaintiff demonstrates malice or outrageous conduct).

In *Beeman*, we affirmed a judgment notwithstanding a verdict for punitive damages. We stated that

> [f]or punitive damages, a defendant's conduct must be more egregious than mere negligence; it must amount to a willful and wanton disregard for the public's rights or safety established by a preponderance of clear, convincing, and satisfactory evidence.

496 N.W.2d at 256 (citing Iowa Code § 668A.1). We concluded that there was insufficient evidence of the necessary elements for punitive damages.

In the present case, the jury was instructed in language identical to Uniform Jury Instruction 210.1:

> The Plaintiff asks that you award punitive damages. Such damages may be awarded if the Plaintiff has proven by a preponderance of clear, convincing and satisfactory evidence the Defendants' conduct constituted a willful and wanton disregard for the rights or safety of another and caused actual damage to the Plaintiff.

The court did not define "willful and wanton" conduct (nor, apparently, was it requested to do so). In *Fell v. Kewanee Farm Equipment Co.*, we approved this definition of "willful and wanton" conduct:

> [T]he actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.

457 N.W.2d 911, 919 (Iowa 1990) (quoting *Prosser and Keeton* § 34, at 213).

In this case, when the evidence is viewed in the light most favorable to the plaintiff, the following facts (among others) could cause a reasonable fact finder to conclude that Gabus was guilty of willful and wanton conduct: Gabus misled McGough about Duggie's potential and misstated the appraisal value and the staffing requirements for the business. Taken as a whole, this conduct establishes evidence of legal malice.

We believe that there was adequate evidence from which a jury could find willful and wanton disregard for the rights of this plaintiff and that the court erred in setting aside the verdict for punitive damages.

## VI. *The Interest Issue.*

The plaintiff asked the court to allow prefiling interest, pursuant to Iowa Code section 535.2, for that part of the jury's verdict, $216,645, that represented the benefit-of-the-bargain damages.

Under section 535.2, interest is allowed for recoveries "when the damage is complete at a particular time ... although the damage has not been fixed in a specific sum." *Lem-*

*rick v. Grinnell Mut. Reinsurance Co.*, 263 N.W.2d 714, 720 (Iowa 1978).

While other damages were not set as of the time when the sale was made, we believe the differential in values between the business as represented and as it actually existed was fixed as of that time. The court should have permitted interest from that time forward on the benefit-of-the-bargain damages.

We reverse on the appeal on the issue of lost profits, reverse on the cross-appeal on the issue of punitive damages and the interest allowance, and affirm in all other respects. We remand the case for entry of a judgment, in accordance with this opinion, which strikes the recovery for lost profits, reinstates punitive damage awards, and allows interest as of the time of the completion of the sale on the recovery for the benefit-of-the-bargain damages.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; REVERSED ON CROSS–APPEAL; CASE REMANDED.**