# IN THE COURT OF APPEALS OF IOWA

No. 18-0942
Filed April 3, 2019

**DELORIS GRACE YOUNG, by and through her attorney-in-fact Robert A. Young and Joan E. Ambrose,**
      Plaintiffs-Appellants,

**vs.**

**RALLY APPRAISAL, L.L.C. and FUHRMEISTER APPRAISAL, L.L.C.,**
      Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Johnson County, Chad A. Kepros,

Judge.


        A beneficiary of an estate challenges the grant of summary judgment to two

appraisal companies on her claim of negligent misrepresentation.  **AFFIRMED.**


        Max E. Kirk and Eashaan Vajpeyi of Ball, Kirk & Holm, Waterloo, for

appellant.

        Mark A. Schultheis and Ethan S. Olson of Nyemaster Goode, P.C., Des

Moines, for appellee Fuhrmeister Appraisal, L.L.C.

        Chad M. VonKampen and Graham R. Carl of Simmons Perrine Moyer

Bergman PLC, Cedar Rapids, for appellee Rally Appraisal, L.L.C.


        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

At issue in this case is 59.14 acres of agricultural land just north of the city of North Liberty appraised at $1.24 million. The land belonged to the estate of William Young.[1] A beneficiary of that estate, Deloris Grace Young, appeals the grant of summary judgment in favor of two appraisal companies on her claim of negligent misrepresentation. Because the district court appropriately found no genuine issue of material fact on the element of justifiable reliance, and the appraisers were entitled to judgment as a matter of law, we affirm.

## I. Facts and Prior Proceedings

Grace and Richard Young raised their three children—William, Robert, and Joan—on a farm just outside of North Liberty. As an adult, William became a real estate developer and purchased nearly sixty acres of farmland adjacent to their home farm. William died in July 2014. His will—prepared before his marriage to Mary—left a life estate in his assets to his parents Grace and Richard, and a remainder interest to his siblings Robert and Joan. In September 2014, Mary filed an election to take her share as his surviving spouse under Iowa Code section 633.238 (2014). Richard died later that same month, leaving Grace as the sole owner of the life estate in her son William's assets.

The administration of William's estate required negotiations concerning the distribution of assets and assumption of liabilities between Grace and Mary to

---

[1] Because many of the people involved in this case share the surname Young, we will use their first names. Attorneys in fact, Robert Young and Joan Ambrose, refer to their mother as Grace, so we will follow suit.

settle Mary's claim. According to Grace, key to those negotiations was an appraisal of the real estate owned by William at the time of his death.

As an executor of William's estate, the trust department of U.S. Bank hired Rally Appraisal, L.L.C. to estimate the "fee simple market value" of two parcels of agricultural land totaling 59.14 acres in Johnson County as of the date of William's death. Rally Appraisal inspected the property in November 2014 and delivered its report the following month. The property was "located immediately north of North Liberty. The land to the south has been developed with single family housing and the subject land has residential development potential in the near future." Still, the report listed the "highest and best use of the land" as "agricultural." Using a "sales comparison approach," the report estimated the land's value at $1.24 million.

William's siblings, Robert and Joan, served as attorneys-in-fact for their elderly mother, Grace.[2] After receiving the Rally report, Joan emailed her brother Robert to suggest seeking "a second opinion on the 60 acres appraisal." She speculated the "comparable properties" used in the Rally appraisal already fed into North Liberty sewer lines, but "the 60 acres is not sewer ready and will not be any time soon." She relayed a conversation she had with a city planner who "could not predict" whether the land would be used for residential purposes within five years but confirmed the development focus was on the east side of town, where a new high school was opening. Joan believed the estimated value was too high, opining "this appraisal is a bit slanted toward a price that is more than five years out and certainly not 'as of' Bill's death date." Joan also communicated her opinion the

---

[2] Robert and Joan were acting under a durable power of attorney signed in November 2012.

appraisal was too high to Grace's attorney Joseph Moreland. She informed Moreland William's 2012 financial statement listed the property's value at $600,000.

Robert likewise had concerns that two of the "comparables" used in Rally's appraisal were not really "comparable" to the 60 acres at issue. He conveyed his concerns to Jim Larew, the estate's attorney. But the estate decided not to seek another appraisal. So, in February 2015, Robert and Joan asked attorney Moreland to line up a second opinion at their mother's expense. Moreland contacted Fuhrmeister Appraisal, L.L.C. Dan Fuhrmeister reviewed the Rally report and responded:

> I have completed some preliminary research. I feel the sales used are realistic and the value is in line. . . . . Development potential looks strong for this property. Based on the information I have seen, I do not feel my value will be substantially different than that of the [Rally] appraisal.

Based on that response, Moreland recommended they cancel a meeting scheduled with Fuhrmeister. Robert agreed to cancel the second appraisal, writing to Moreland: "I am not certain the appraisers have looked at the sewer drainage issue and the time frame for development to occur. But, I respect the professional's analysis over mine. Let's pay Mr. Fuhrmeister for his time and cancel the appointment."

In May 2015, Robert and Joan entered mediation with Mary over the distribution of assets from William's estate. They emerged from the mediation with a family settlement agreement, signed by all parties in July 2015. As part of the settlement, the 59.14 acres of land were transferred by warranty deed to Grace.

In December 2016, Robert and Joan filed suit against Rally Appraisal, alleging the company was negligent in its appraisal of the 59.14 acres, resulting in "a significant overstatement" of the value. The petition asserted:

> As a result of this overstatement of value, Plaintiff Deloris Grace Young assumed certain liabilities which were believed to be commensurate with the value of other assets received, including the 59.14 acre parcel of land. In reality, the liabilities assumed by Plaintiff Deloris Grace Young greatly exceeded the value of the assets received, due to the overstatement of value of the 59.14 acre parcel of land, thereby causing significant financial loss to Plaintiff Deloris Grace Young.

The petition also named Fuhrmeister Appraisal as a defendant, alleging the company was negligent in its review of the Rally Appraisal and Grace relied on the accuracy of that appraisal at her detriment.

Rally Appraisal filed a motion for summary judgment, which Fuhrmeister Appraisal joined. Grace resisted. The district court granted summary judgment in favor the appraisers. Grace challenges that ruling on appeal.

## II.     Scope and Standard of Review for Summary Judgments

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). A question of fact exists "if reasonable minds can differ on how the issue should be resolved." *Murtha v. Cahalan*, 745 N.W.2d 711, 713–14 (Iowa 2008).

We review summary judgment rulings for the correction of errors of law. *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 806 (Iowa 2018). We view the evidence in the light most favorable to the party opposing summary judgment—

here, Grace Young. *See id.* On appeal, we "indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question." *Crippen v. City of Cedar Rapids,* 618 N.W.2d 562, 565 (Iowa 2000).

## III. Analysis

Grace contends she was entitled to a trial on her action for negligent misrepresentation against the appraisal companies. Our supreme court has embraced the following description of that tort:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 287 (Iowa 1981) (citing Restatetment (Second) of Torts § 552 (Am. Law Inst. 1977)).

The burden rested on Grace to prove the following elements: (1) the appraisers made the representations in the course of their business; (2) the representations were false when made; (3) the appraisers made the representations for the guidance of others in their business transactions; (4) the appraisers were negligent in making the representations; (5) the representations were made for the benefit of Grace; (6) the appraisers intended the information influence Grace in a specified or similar transaction; and (7) her reliance on the representations was reasonable or justified. *See Bradshaw v. Wakonda Club*, 476 N.W.2d 743, 747 (Iowa Ct. App. 1991).

In its motion for summary judgment, Rally Appraisal alleged:[3]

[T]here is no genuine issue of material fact and Rally is entitled to judgment as a matter of law for the following reasons:

a. Plaintiff's alleged reliance on the Appraisal was not justified under the circumstances;
b. Plaintiff did not actually rely on the Appraisal when the 59 Acres were obtained under the Settlement Agreement;
c. Plaintiff's contributory negligence bars her negligent misrepresentation claim;
d. Plaintiff's fault exceeds any fault of the defendants, and accordingly Plaintiff is barred from recovery; and
e. Defendant did not cause the Plaintiff's alleged damages.

Furhrmeister joined the motion for summary judgment and added that Grace's claims against him were based on a single email.

In her resistance, Grace asserted the existence of genuine issues of material fact as to whether she was justified in relying on the Rally appraisal (and Fuhrmeister's affirmation) in the mediation and whether she in fact relied on them. Grace argued the appraisers were mistaken in relying on "contributory negligence" when that concept was abandoned by Iowa courts in 1982. She also asserted comparative fault and causation were fact questions to be decided by a jury.

The district court decided even when viewed in the light most favorable to Grace, the record did not show she reasonably or justifiably relied on the information provided by the appraisers in her decision to enter the family settlement agreement. While her attorneys-in-fact, Joan and Robert, were not realtors or appraisers, as the district court insightfully noted, "they are far from

---

[3] Rally asserts in its brief that it still believes the appraisal appropriately valued the 59.14 acres, but does not challenge the alleged falsity of the representation on appeal because of the posture of the case on summary judgment.

naïve about the matters at issue with the 59.14 acres."[4]  According to the undisputed facts, Joan and Robert were "aware of the lack of sanitary sewer service for, and lack of a plan by North Liberty to provide sanitary service to, the 59 acres."  They were also aware the property was "not in proximity to public infrastructure."  Given those facts, the siblings "expressed opinions that the sales comparisons used by Rally were improper" for the agricultural land.  They questioned attorney Moreland about this issue.  "Joan expressly stated she disagreed with the appraisal; that she found Rally to not be 'farmland friendly'; and she believed Rally's analysis was 'biased and shallow, and[,] frankly[,] inaccurate.'"  Even harboring these strong opinions about the deficiencies of the appraisal, Joan and Robert nevertheless entered the family settlement agreement on Grace's behalf.

We recognize justifiable reliance usually presents a question of fact.  But the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified.  *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018) (upholding pretrial judgment for defendants).  We agree with the district court's conclusion the siblings' alleged reliance on the appraisal was not justified under the instant circumstances.

We start with the concept of "justifiable reliance."  In the context of a fraud suit, our supreme court decided a plaintiff could not recover if he "blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized

---

[4] Both Robert and Joan were well-educated.  Robert was a physician, and Joan had a bachelor's degree from Northwestern University.  They also had personal knowledge about the real estate at issue because their home farm bordered the 59.14 acres.

his opportunity to make a cursory examination or investigation." *McGough v. Gabus*, 526 N.W.2d 328, 332 (Iowa 1995) (reiterating standard: "whether the complaining party, in view of his own information and intelligence, had a right to rely on the representations").[5]  A folksy illustration of this principle appears in the Second Restatement of Torts: "[I]f one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect." *See* Restatement (Second) of Torts § 541 cmt. a.  In this case, Joan and Robert complained about the horse having just one eye, but bought it just the same.

In attempt to survive summary judgment, Robert and Joan point to Robert's email to attorney Moreland agreeing to cancel their meeting with Fuhrmeister, saying: "I respect the professional's analysis over mine."  We do not believe this minor concession constitutes a material fact capable of proving justifiable reliance. A person may not justifiably rely on a professional representation if "red flags" signal such reliance is unwarranted. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003).  The "red flags" Robert and Joan recognized before the mediation precluded their justifiable reliance on the appraisal. *See id.*  Robert and Joan were sophisticated bargainers who were on notice of the alleged flaws in the appraisal based on their research of the North Liberty development trends and their contacts with the city planners.  They ignored the red flags at their own peril.

---

[5] For common-law fraud, Iowa law does not require a plaintiff to prove their reliance was reasonable. *McGough*, 526 N.W.2d at 332.

Justifiable reliance is an essential element of Grace's cause of action against both appraisers. Because we have determined, as a matter of law, she cannot show justifiable reliance on the appraisal in negotiation the family settlement agreement, we need not address the appraiser's remaining grounds. We affirm the grant of summary judgment.

**AFFIRMED.**