# IN THE COURT OF APPEALS OF IOWA

No. 24-0524
Filed October 1, 2025

**BRIDGE GAP ENGINEERING, LLC, a Pennsylvania limited liability company, on its own behalf and as assignee of MISSOURI CEMENT, L.L.C. d/b/a CONTINENTAL CEMENT COMPANY, L.L.C.,**
        Plaintiff-Appellant,

**vs.**

**AMERICAN PFEIFFER CORPORATION, a Pennsylvania corporation d/b/a CHRISTIAN PFEIFFER AMERICA and CHRISTIAN PFEIFFER MASCHINENFABRIK, GMBH,**
        Defendants-Appellees.
_____

Appeal from the Iowa District Court for Scott County, John D. Telleen, Judge.

An engineering firm appeals the district court's award of damages on remand from a summary judgment ruling. **AFFIRMED.**

James S. Zmuda (argued) and Keisha N. Douglas of Califf & Harper, P.C., Moline, Illinois, for appellant.

Ian J. Russell (argued), Grace E. Mangieri, and Jenny L. Juehring of Lane & Waterman, LLP, Davenport, for appellees.

Heard at oral argument by Greer, P.J., and Badding and Chicchelly, JJ. Telleen, S.J., takes no part.

**BADDING, Judge.**

When this case was first before our court on appeal, the district court had awarded Bridge Gap Engineering $6,635,617.62 in damages from an uncontested motion for summary judgment in its suit against Christian Pfeiffer for breach of contract, negligent misrepresentation, and fraud.[1]  In that appeal, we reversed the court's denial of Christian Pfeiffer's motion to reconsider the damage award and remanded for the court to decide whether a "liquidated-damages provision applies to Bridge Gap's causes of action and to enter a summary judgment order with the appropriate award of damages."  *Bridge Gap Eng., LLC v. Am. Pfeiffer Corp.*, No. 21-1966, 2022 WL 3053290 (Iowa Ct. App. Aug. 3, 2022).

Consistent with that direction, the district court issued a remand decision finding the liquidated-damage provision applied and reducing Bridge Gap's damage award to $114,750.  Bridge Gap appeals, claiming the provision does not apply and, even if it does, the court miscalculated its damages.  Finding no error of law, we affirm.

I.      **Background Facts and Proceedings**

As we explained in the first appeal, in February 2018, Bridge Gap contracted with Continental Cement Company, L.L.C. to upgrade the company's Davenport cement plant by installing a new high-efficiency separator from Christian Pfeiffer.  The total contract price that Continental owed Bridge Gap was $6,453,500, later increased through a change order to $6,770,935.  The next

---

[1] Bridge Gap sued both American Pfeiffer Corporation, which is based in Pennsylvania, and its manufacturing parent company in Germany—Christian Pfieffer Maschinenfabrik GmbH.  As we did in the first appeal, we will refer to these defendants collectively as Christian Pfeiffer.

month, Bridge Gap submitted a purchase order to Christian Pfeiffer to buy the separator for $765,000. There were three attachments to the purchase order: (1) a fine-print "terms and conditions for purchase of goods and services"; (2) Exhibit A, a "Document List for HES Project in Davenport IA" from Bridge Gap's underlying contract with Continental; and (3) Exhibit B, titled "Performance Guarantee," which was also from the Bridge Gap–Continental contract.

The first page of the purchase order stated, "Equipment performance to comply with previously agreed guarantees which are part of the final contract included as 'Exhibit B.'" Section a.3 of Exhibit B set out the required performance guarantees,[2] while section a.4 laid out "damages for deficient performance." Paragraph 6 of section a.4, titled "Total Damages," provided the following damage limitations:

> NEITHER THE CONTRACTOR NOR OWNER SHALL BE LIABLE UNDER THE CONTRACT OR UNDER ANY CAUSE OF ACTION RELATED TO THE SUBJECT MATTER OF THIS CONTRACT, WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PRODUCTS LIABILITY, PROFESSIONAL LIABILITY, INDEMNITY, CONTRIBUTION OR ANY OTHER CAUSE OF ACTION, FOR AMOUNTS IN EXCESS OF THIRTY PERCENT (30%) OF THE CONTRACT PRICE (AS MAY BE ADJUSTED BY CHANGE ORDER); PROVIDED, HOWEVER, NOTWITHSTANDING THE FOREGOING, THE LIMITATION OF LIABILITY SET FORTH IN THIS SECTION (A) SHALL NOT: (i) APPLY IN THE EVENT OF THE CONTACTOR'S OR OWNER'S WILLFUL MISCONDUCT OR GROSS NEGLIGENCE; OR (ii) INCLUDE THE PAYMENT OF PROCEEDS UNDER ANY INSURANCE POLICY SPECIFIED IN THE CONTRACT.
>
> SUBJECT TO SECTION a.4 OF EXHIBIT B, THE CONTRACTOR'S MAXIMUM LIABILITY TO THE OWNER FOR PERFORMANCE LIQUIDATED DAMAGES IS 15% OF THE CONTRACT PRICE IN THE AGGREGATE.

---

[2] One guarantee promised to increase cement production by 17.4 percent, while the other promised to decrease power consumption by 10.7 percent.

**REGARDLESS OF ANY OTHER PROVISION OF THE CONTRACT, THE CONTRACTOR AND OWNER SHALL NOT BE RESPONSIBLE OR HELD LIABLE TO THE OTHER PARTY FOR ANY LIABILITY FOR LOSS OF PROFITS, LOSS OF REVENUE, LOSS OF PRODUCT, LOSS OF CUSTOMERS, UNABSORBED OVERHEAD, HOME OFFICE OVERHEAD, ADDITIONAL INTEREST OR FINANCE CHARG[E]S OR BUSINESS INTERRUPTION OR FOR ANY TYPE OF CONSEQUENTIAL, PUNITIVE, SPECIAL, EXEMPLARY OR INCIDENTAL DAMAGES, ARISING FROM ANY CAUSE WHATSOEVER, WHETHER OR NOT SUCH LOSS OR DAMAGE IS BASED IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, INDEMNITY OR OTHERWISE.**

After the separator was installed, Bridge Gap alleged the finish mill system at Continental's plant failed to conform to the required performance guarantees set out in Exhibit B to the purchase order. So Bridge Gap, on its own behalf and as assignee of Continental, sued Christian Pfeiffer for breach of contract, negligent misrepresentation, and fraud, with a demand for $7,000,000 in damages.

Bridge Gap moved for summary judgment on all three of its claims in August 2021. Christian Pfeiffer failed to file a resistance. The district court accordingly set a hearing on the motion, noting that Bridge Gap had not alleged "a sum certain for judgment." At the unreported hearing in November, Bridge Gap submitted several exhibits on damages, including a breakdown of its requested damages, totaling $6,635,617.62. The breakdown did not state whether the damages sought were for breach of contract, negligent misrepresentation, or fraud. After the hearing, the court entered a ruling for Bridge Gap:

> On the issue of damages for Plaintiff's Motion for Summary judgment, the court received affidavits and exhibits into evidence without objection from Defendants. The court finds Plaintiff is entitled to damages in the total amount of $6,635,617.62 as detailed in Exhibit 4. Judgment is entered granting Plaintiff's Motion for

Summary judgment as Defendants never resisted the motion and still have not done so.

Christian Pfeiffer filed a motion under Iowa Rule of Civil Procedure 1.904(2), asking the court to reconsider the damage award and arguing that the liquidated-damages provision in Exhibit B to the purchase order applied to limit Bridge Gap's recovery to fifteen percent of the total contract price. The court denied the motion, finding it was "improper now for Defendants to claim there is additional evidence supporting a different amount of damages."

On Christian Pfeiffer's appeal from that ruling, we determined the provision was not new evidence, reasoning:

> Indeed, a contract cannot be new evidence if it underlies the dispute. Here, the district court relied on the performance guarantees when entering judgment in Bridge Gap's favor. The contract was central to Bridge Gap's right to recover damages. And that same contract contained the liquidated-damages provision that the court did *not* consider when awarding damages. Thus the court was mistaken in considering the provision to be "additional evidence" to support Christian Pfeiffer's position.

*Bridge Gap Eng., LLC*, 2022 WL 3053290, at *5. We concluded that the court "should have considered the entire performance guarantee contract when awarding damages as part of its summary judgment order" and remanded "for further proceedings to determine the applicability of the liquidated-damages provision." *Id.*

Back in district court, Bridge Gap filed a brief arguing that the liquidated-damages provision was "not part of the parties' contract" and that the provision conflicted with the remedies section of the purchase order's terms and conditions. That section provided, in part, that in the event of Christian Pfeiffer's breach, Bridge Gap "shall have the right, after any applicable cure period, to recover . . . any and

all mitigated losses and reasonable additional expenses incurred by" Bridge Gap from the breach. Bridge Gap alternatively claimed that even if the court "were to find the Purchase Order contract does include a liquidated damages provision . . . such provision does not apply to damages for its fraud claims."

Christian Pfeiffer replied, asserting that its contract with Bridge Gap included the liquidated-damages provision in Exhibit B, which was consistent with the remedies section in the terms and conditions. Christian Pfeiffer argued that under the liquidated-damages provision, its damages should be limited to fifteen percent of the contract price, which it contended was the amount due under the purchase order—$765,000—and not the amount of the underlying contract between Bridge Gap and Continental.[3]

After limited arguments from the parties at a reported hearing, the district court entered a detailed ruling that framed the "one, narrow question" before it as: "Does the liquidated damages provision contained in the parties' contract limit" Bridge Gap's recovery? The court concluded that it did.

In reaching that conclusion, the court began by finding that Exhibit B, with its liquidated-damages provision, was part of the parties' contract. Next, the court described the structure of the liquidated-damages provision as follows:

---

[3] To support this latter argument, Christian Pfeiffer relied on a February 13, 2018 email between the parties about the liquidated-damages provision. The email was not part of the original summary judgment record and was not considered by the district court. Christian Pfeiffer cited the email in its brief in this appeal, and Bridge Gap filed a motion to strike. Because we only "consider the evidence before the court at the summary judgment stage, not other or additional evidence that might have been introduced later in the case," we grant Bridge Gap's motion to strike Christian Pfeiffer's references to the February 13, 2018 email. *Buboltz v. Birusingh*, 962 N.W.2d 747, 754 (Iowa 2021).

[I]t begins with a general recitation of the maximum amount of damages recoverable under the contract and related causes of action (the 30% clause). Then, it narrows the aperture, focusing on the contractor's liability with respect to the performance guarantees (the 15% clause). Finally, the third, catch-all clause negates the possibility of any class of damages not already disposed of by the first two clauses. The liquidated damages provision systematically addresses common sorts of damages and limits them to certain agreed upon percentages.

Under that structure, the court rejected Bridge Gap's argument that the provision conflicted with the remedies section of the terms and conditions, reasoning that because the "damage cap" in Exhibit B is more specific, "it must be treated as modifying and superseding the boilerplate language" of the terms and conditions. In applying the fifteen percent liquidated-damages provision to Bridge Gap's claims, the court determined that its previous damages order for $6,635,617.62 only awarded damages for breach of contract, so the willful-misconduct and gross-negligence exclusion did not apply. Based on those conclusions, the court awarded Bridge Gap $114,750 in damages, using the $765,000 purchase order price.

## II. Standard of Review

We review the district court's summary judgment ruling, including its interpretation and construction of the parties' contract, for the correction of errors at law. *Homeland Energy Solutions, LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020).

## III. Analysis

Bridge Gap claims the district court erred in its damage award for three reasons: (1) the terms and conditions of the purchase order negated the liquidated-damages provision; (2) the liquidated-damages provision "excludes Christian

Pfeiffer's willful misconduct, gross negligence or fraud from any contractual damage limitation"; and (3) the court erred in its damage calculation.[4]

Before reaching the merits of these issues, we start with some basic contract principles. In the contractual context, "interpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect." *Id.* (cleaned up). "It is a cardinal principle of contract law the parties' intention at the time they executed the contract controls." *Hofmeyer v. Iowa Dist. Ct.*, 640 N.W.2d 225, 228 (Iowa 2001). Because the "language the parties used is the most important evidence of their intentions," we strive "to give effect to all language of the contract." *Homeland Energy Sols.*, 938 N.W.2d at 687. With these principles in mind, we turn to Bridge Gap's claims on appeal.

## A.     Terms and Conditions of the Purchase Order

Starting with the language of the contract before us, the purchase order that Bridge Gap submitted to Christian Pfeiffer for the separator stated: "Equipment performance to comply with previously agreed guarantees which are part of the final contract included as 'Exhibit B.'" Exhibit B was attached to the purchase

---

[4] Bridge Gap also claims that the district court erred by failing to find the "liquidated damages provision, limiting damages resulting from fraud, is unenforceable as violative of public policy." But, as Christian Pfeiffer argues, Bridge Gap failed to cite any authority or make a substantive argument in support of this issue. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) ("A party forfeits an issue on appeal when the party fails to make an argument in support of the issue."). Bridge Gap's reference to its district court briefing is insufficient to present the issue for our review. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) ("No authorities or argument may be incorporated into the brief by reference to another document."). So we do not consider it further.

order, along with Bridge Gap's "terms and conditions for purchase of goods and services." The first paragraph of section 1 of those terms and conditions states:

> This purchase order, together with these Terms and Conditions, and *any attachments and exhibits* . . . whether physically attached or incorporated by reference (collectively the "Purchase Order"), *constitutes the entire and exclusive agreement* between Bridge Gap Engineering LLC (the "Buyer") and the Supplier ("Supplier") identified on the first page of this Purchase Order.

(Emphasis added.)

"Under the doctrine of incorporation, one document becomes part of another separate document simply by reference as if the former is fully set out in the latter" and is "to be interpreted as part of the writing." *Hofmeyer*, 640 N.W.2d at 228. Because the purchase order clearly referred to Exhibit B, which was also attached to the order, the district court correctly concluded that it was part of the parties' contract. Yet Bridge Gap argues that because the liquidated-damages provision in Exhibit B "is contrary to the remedy provided by section 21" of the terms and conditions, "any purported limitations of liability of Exhibit B are not part of the Purchase Order."

In support of this argument, Bridge Gap points to the second paragraph of section 1 of the terms and conditions, which provides:

> Buyer's submission of this Purchase Order is conditioned on Supplier's agreement that any terms different from or in addition to the terms of the Purchase Order, whether communicated orally or contained in any purchase order confirmation, proposal, quotation, invoice, acknowledgement, release, acceptance or other written or electronic correspondence, irrespective of the timing, shall NOT form a part of the Purchase Order, even if Supplier purports to condition its acceptance of the Purchase Order on Buyer's agreement to such different or additional terms.

But, as set out above, the first paragraph of section 1 specifically defined "Purchase Order" to mean the "purchase order, together with these Terms and Conditions, and any attachments and exhibits." Because Exhibit B and its liquidated-damages provision was attached to and incorporated in the purchase order, *see id.*, it is not a different or additional term subject to this provision. Instead, it's part of the contract being interpreted and construed.

Bridge Gap also argues the district court "wrongly described" the remedies section of the terms and conditions as "ambiguous boilerplate" and erred in construing that section against it as the drafter. *See Peak v. Adams*, 799 N.W.2d 535, 548 (Iowa 2011) ("We generally construe ambiguous boilerplate language against the drafter."); *see also Boilerplate*, Black's Law Dictionary (11th ed. 2019) (defining "boilerplate" as "[r]eady-made or all-purpose language that will fit in a variety of documents" and "[f]ixed or standardized contractual language that the proposing party often views as relatively nonnegotiable").

Whether the remedies section is ambiguous boilerplate or not, the district court determined that it did not supersede the liquidated-damages provision for a reason that's not challenged by Bridge Gap on appeal: "the canon that holds that a specific provision controls over apparently conflicting general provisions." *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) ("[W]hen a contract contains both general and specific provisions on a particular issue, the specific provisions are controlling."). The court found that the remedies section "reads as a general catch-all provision," unlike the liquidated-damages provision, which

> specifically identifies the classes of damages that it limits, namely, "Performance Liquidated Damages" and damages "Under the Contract."
>
> Because Exhibit B's damage cap is more specific than the [terms and conditions], it must be treated as modifying and superseding the boilerplate language of the [terms and conditions]. Thus, the Liquidated Damages Clause applies to the damages awarded in this case.

We agree and find no error of law in the court's conclusion that the liquidated-damages provision was part of the parties' contract.

## B.    Willful Misconduct and Gross Negligence Exclusion

As stated in the background facts, paragraph 6 of section a.4 in Exhibit B to the purchase order contains three paragraphs limiting damages under the contract. The first paragraph, which limits damages "under the contract" to thirty percent of the contract price, states that it does not apply "in the event of the contractor's or owner's willful misconduct or gross negligence." Bridge Gap argues that because it "clearly pled willful misconduct, and the District Court granted [it] summary judgment as to liability based on all of [its] claims," "the damage limitations of Exhibit B do not apply to fraud."[5]

There are two problems with Bridge Gap's argument. First, while its claims included negligent misrepresentation and fraud, the district court's initial summary judgment ruling simply stated: "Judgment is entered granting Plaintiff's Motion for Summary Judgment as Defendants never resisted the motion and still have not

---

[5] Bridge Gap also mentions in passing that the court "did not conduct any meaningful analysis of whether Christian Pfeiffer can limit its damages for negligent misrepresentation." But it does not provide any argument on that issue until its reply brief, so we do not address it further. *See Jackson*, 4 N.W.3d at 311; *see also Goebel v. Green Line Polymers, Inc.*, No. 18-1244, 2019 WL 4678169, at *3 n.8 (Iowa Ct. App. Sept. 25, 2019) ("To the extent [the appellant] sufficiently formulates the argument for the first time in his reply brief, we do not consider it.").

done so." There were no findings that would suggest the court found Christian Pfeiffer was liable for willful misconduct or gross negligence, neither of which was pled by Bridge Gap. By claiming that it pled "willful misconduct," Bridge Gap seems to be equating that claim with one for fraud. But the two are not necessarily the same. While fraud requires intentional conduct, it does not always encompass willful misconduct. *See McGough v. Gabus*, 526 N.W.2d 328, 331, 334 (Iowa 1995) (stating one element of a fraud claim is "intent to deceive," but noting that to receive punitive damages, an additional finding of "willful and wanton conduct" must be made); *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 214 (Iowa 1980) (observing that "not every fraud case permits" a punitive damage award, which requires "additional circumstances of aggravation"). So entry of summary judgment on Bridge Gap's fraud claim does not mean there was also a finding of willful misconduct.

Second, the damages breakdown that Bridge Gap submitted to the district court before the first appeal did not specify whether the requested damages were for breach of contract, negligent misrepresentation, or fraud. And the court's initial summary judgment order did not state which claim the damages it awarded were tied to. On remand, the court determined that its "previous damages order awarded damages only on [the] breach of contract claim." Bridge Gap fails to explain why that finding was incorrect, other than to argue that summary judgment was granted on all its claims. We agree. But a "successful plaintiff is entitled to one, but only one, full recovery, no matter how many theories support entitlement." *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 770 (Iowa 1999) (citation omitted). "Duplicate or overlapping damages are to be avoided." *Id.*

Because a party cannot be compensated twice for the same damages, and Bridge Gap does not make any argument about the measure of damages it used to calculate its losses, we find no error in the court's conclusion that the damages were limited to the breach-of-contract claim. *See Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 n.W.2d 418, 421 (Iowa 2023) ("We generally will not do a party's work for them, particularly if that requires us to assume a partisan role and undertake the party's research and advocacy." (cleaned up)).

### C.    Damage Calculation

In challenging the district court's damage calculation, the only argument raised by Bridge Gap that has not been addressed above is the contract price that should be used in applying the liquidated-damages provision. That provision caps Christian Pfeiffer's "maximum liability to the owner for performance liquidated damages" at "15% of the contract price in the aggregate." The court determined the applicable contract price was $765,000—the amount of the purchase order between Bridge Gap and Christian Pfeiffer. But Bridge Gap asserts that the correct contract price is the one from the underlying contract between Bridge Gap and Continental—$6,770,935—because Continental is the "owner" referred to in the liquidated-damages provision.

We reject this argument because neither the Bridge Gap–Continental contract nor its contract price were incorporated into Bridge Gap's purchase order with Christian Pfeiffer. The only parts from that contract that were included were Exhibits A (the document list for the project) and B (the performance guarantees and liquidated-damages provision). Neither contained the contract price from Bridge Gap's underlying contract with Continental. *See Royal Indem. Co. v.*

*Factory Mut. Ins. Co.*, 786 N.W.2d 839, 847 (Iowa 2010) ("[D]amages based on breach of a contract must have been foreseeable or have been contemplated by the parties when the parties entered into the agreement." (citation omitted)). Under the purchase order's terms and conditions, "any terms different from or in addition to the terms of the Purchase Order, whether communicated orally or contained in any . . . written or electronic correspondence, irrespective of the timing, shall NOT form a part of the Purchase Order." We conclude the district court correctly used the purchase order's price of $765,000 to calculate the liquidated damages because the Bridge Gap–Continental contract price was outside the terms of Bridge Gap's purchase order with Christian Pfeiffer. *See id.* ("The nature and terms of the contract necessarily dictate the damages recoverable.").

## IV. Conclusion

Having considered all the issues properly before us, we affirm the district court's remand decision awarding Bridge Gap $114,750 in damages.

**AFFIRMED.**